MEISTER BROS., INC.,
Plaintiff-Appellant,

v.

John W. MACY, Jr., Director of Federal Emergency Management Agency,
Defendant-Appellee.

No. 81–1795.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1982.

Decided March 29, 1982.

Rehearing Denied June 11, 1982.

---

David W. Stuckel, Harvey & Stuckel, Peoria, Ill., for plaintiff-appellant.

Janet L. Jannusch, Asst. U. S. Atty., Peoria, Ill., for defendant-appellee.

Before PELL and SPRECHER, Circuit Judges, and MARKEY,* Chief Judge.

PELL, Circuit Judge.

The appellant filed this suit in the district court to recover $76,404.61 in building damage and clean-up costs for debris removal allegedly incurred by it and covered under a flood insurance policy issued pursuant to the National Flood Insurance Act, 42 U.S.C. § 4001 *et seq.* (1976). The appellee, the Federal Emergency Management Agency (FEMA or Agency) filed a motion for summary judgment predicated solely on the appellant's failure to file a sworn proof of loss within sixty days from the alleged loss, as required by the insurance contract.[1] Summary judgment was granted. The only issue in this appeal is whether the appellant's failure to file a timely proof of loss is a complete defense available to FEMA.[2]

The facts bearing on liability are not in dispute. On or about July 9, 1978, the appellant's commercial premises were damaged by a flood. The General Adjustment Bureau was delegated by the appellee's predecessor the responsibility of assessing the loss for the NFIP. Dennis Bush, an adjustor with the Bureau, was assigned to the investigation.

Bush first inspected the premises on July 10, 1978, and furnished a report on this first visit to the central office of the National Flood Insurance Program. On July 18, 1978, the appellant submitted a formal Notice of Loss as required by the policy.

---

* Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

1. The National Flood Insurance Program (NFIP), created pursuant to the National Flood Insurance Act, is a federally subsidized program which provides flood insurance at or below actuarial rates. From June 6, 1969 to December 31, 1977, the program was administered by the National Flood Insurers Association, an unincorporated association of insurance carriers under a contract with the Department of Housing and Urban Development (HUD). Effective January 1, 1978, HUD took over administration of the program. By executive order on April 1, 1979, FEMA assumed responsibility for administering the program. Because of the occasional changes in the identity of the governmental agency responsible for administering the program, we collectively will refer to whatever agency was currently administering the program as FEMA, Agency or central office of the NFIP.

2. The appellant conceded in oral argument that federal law governs the issues in this case. *See, e.g., Continental Imports, Inc. v. Macy,* 510 F.Supp. 64 (E.D.Pa.1981).

From July to September, and thereafter until December 22, 1978, Bush made several visits to the site to investigate the loss, to arrange a salvage sale, and to negotiate the amount of the loss to be submitted for reimbursement. Throughout he filed reports of his investigation and negotiations with the NFIP. It is uncontested by the appellee that at no time in this period did Bush ever tender to the appellant a proof of loss form so as to indicate that anything other than the Notice of Loss had to be filed by the appellant within the sixty days. Bush stated it was not his practice to prepare a proof of loss until the parties had reached an agreement on the amount of the loss. Nor is it contested that the Agency had all the information from Bush's reports that it would have had had a proof of loss been filed.[3]

On December 22, 1978, Bush prepared and submitted a proof of loss form executed by the appellant, over three months after the deadline for filing. The form, under a section for stating the "full cost of repair or replacement (building and contents)," had typed in the available space "Partial Payment - Contents $50,000.00." The appellant was subsequently reimbursed $50,000.00 for damage to the contents of the building, and an additional sum of approximately $2,000.00 from the salvage sale. However, Bush continued to investigate and negotiate with the appellant on the settlement offer he had been authorized to make by the central office of the NFIP for the remaining costs of damage to the building and debris removal. None of Bush's reports mention the untimeliness of the proof of loss. No settlement was ever reached on the remaining damages and, as a result, the appellant filed this suit on August 4, 1980.

The appellee does not contend that the traditional elements of estoppel are not present in this case, but rather that the conduct of the federal agency and its agent were not sufficient to create an estoppel against the United States Government.

This court has recognized that, in certain circumstances, estoppel against the United States may be appropriate. *United States v. Fox Lake State Bank*, 366 F.2d 962 (7th Cir. 1966); *accord, United States v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir. 1973). We have also recognized that the applicability of estoppel to the Government should be evaluated in each case with circumspection. *Strauch v. United States*, 637 F.2d 477, 482 (7th Cir. 1980); *Gressley v. Califano*, 609 F.2d 1265, 1267 (7th Cir. 1979).

Estoppel against the United States was deemed appropriate in *United States v. Fox Lake State Bank*, 366 F.2d 962 (7th Cir. 1966). In another case, *Strauch v. U. S., supra*, this court declined to apply estoppel against the Government, distinguishing *Fox Lake* and the Ninth Circuit's decision in *United States v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir. 1973), as situations in which "the Government specifically encouraged a mistake of which it then took advantage." *Strauch v. U. S.*, 637 F.2d 477, 482 (7th Cir. 1980).

The facts of this case are more closely analogous to those in *Fox Lake* than those in *Strauch*. Bush was an investigator for flood insurance claims clothed with authority to investigate, negotiate, and aid in the processing of claims. The Agency had the same information, at the least, from Bush's report as it would have had from a proof of loss filed within the sixty days. Thereafter, Bush investigated and reported the amounts of the loss and actively promoted ongoing negotiations for the amount of the loss to be included in the proof of loss. Settlement offers were made by Bush with authority from the Agency. No proof of loss form was ever tendered to the appellant. However, on December 22, 1978, Bush prepared and submitted a partial proof of loss form over three months late, upon which the appellant, nevertheless, obtained payment. Negotiations on the remaining loss continued thereafter for several months until the parties had reached an

---

**3.** There even appears to be some question whether the proof of loss requirement applies to debris removal. Although the cost of debris removal is clearly covered by the policy, the policy requires that the proof of loss contain only "[t]he interest of the Insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto [and] all encumbrances...."

impasse. Given these facts, we find that the conduct of the Agency and its agent were sufficient to estop the Government from asserting the untimely filing as a defense in any manner. Although it is axiomatic that "[m]en must turn square corners when they deal with the Government," *Rock Island, Arkansas & Louisiana Railroad Company v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), the "public has an interest in seeing its government deal carefully, honestly and fairly with its citizens." *United States v. Wharton*, 514 F.2d 406, 412–13 (9th Cir. 1975).

We emphasize that our holding is of necessity limited to the unique circumstances of this case. In light of the Supreme Court's recent opinion in *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (*per curiam*), it does appear that generally oral misinformation provided by a government employee does not provide a basis for estoppel against the Government. *See, e.g., Cheers v. Secretary of HEW*, 610 F.2d 463 (7th Cir. 1979), *cert. denied*, 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980). Beyond that, however, it is far from clear when the Government may be estopped. *Compare Corniel-Rodriguez v. INS*, 532 F.2d 301 (2nd Cir. 1976); *United States v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir. 1973); *United States v. Fox Lake State Bank*, 366 F.2d 962 (7th Cir. 1966); *Walsonavich v. United States*, 335 F.2d 96 (3d Cir. 1964); *Simmons v. United States*, 308 F.2d 938 (5th Cir. 1962); *Semaan v. Mumford*, 118 U.S.App.D.C. 282, 335 F.2d 704 (1964); *Eichelberger v. Commissioner of Internal Revenue*, 88 F.2d 874 (5th Cir. 1937), *cited in Schweiker v. Hansen*, 450 U.S. 785, 791, 101 S.Ct. 1468, 1472, 67 L.Ed.2d 685 (1981) (Marshall, J., dissenting). Neither of the parties has attempted to address or articulate any general standard and, therefore, resolution of the issue on a broad basis appears inappropriate in this case. Thus, we limit our holding to the facts of this case and do not intend to intimate in any way an appropriate standard for resolution of future cases until the issue is squarely before this court.

We are simply holding on the quite unique facts of this case that a government agency will not be permitted belatedly to assert a technical defense to a law suit which admittedly, if it had been in a state court against a private insurance carrier, would not have prevailed. The Agency was not in any sense acting in a sovereign capacity here but was engaged in essentially a private business. We are not saying that the Agency's actions were intentionally designed to cause the appellant not to see to it that a formal proof of claim was filed. We do say here, however, that the actions of paying a part of the claim under a policy which the insurer has treated as being fully applicable to the entire claim, over many months of time, does not permit a withdrawal thereafter from the position clearly and unambiguously taken.

Accordingly, the district court's granting of summary judgment for the defendant is reversed. As there are no other issues regarding the defendant's liability under the policy, the case is remanded to the district court for a determination on the issue of damages alone with summary judgment to be entered thereafter in that amount in favor of the plaintiff.

REVERSED AND REMANDED.