John E. DEMPSEY, Plaintiff,

v.

DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant.

No. PB-C-80-202.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Nov. 3, 1982.

William Benton, Pine Bluff, Ark., for plaintiff.

Robert J. Govar, Asst. U.S. Atty., Little Rock, Ark., Susan Kantor Bank, Federal Emergency Management Agency, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

Pending before the Court are plaintiff's and defendant's motions for summary judgment made pursuant to Fed.R.Civ.P. 56. From the depositions, affidavits, admissions, exhibits and pleadings of the parties, the Court finds the following facts for the purpose of resolving the motions.

Plaintiff, owner of a house in Pine Bluff, Arkansas, had a standard flood insurance policy (SFIP) issued to him pursuant to the National Flood Insurance Act of 1968 (42 U.S.C. §§ 4001, *et seq.* (1970), as amended (Supp.1973)). The policy covered the period October 27, 1978, to October 27, 1979, and insured against all "direct loss by flood."

On or about December 10, 1978, plaintiff incurred damage to his residence as a result of a heavy rainstorm which caused an unusual and rapid accumulation or runoff of surface waters. That same day he notified by phone Mr. Michael Lawyer, the insurance agent who had sold him the policy. Mr. Lawyer drove to plaintiff's residence the following day and verified that water damage had occurred.

On or about May 10, 1979, there was another heavy rainstorm in the Pine Bluff area and again plaintiff called Mr. Lawyer to report water damage to his residence. This time, however, Mr. Lawyer did not go to the plaintiff's house to view the alleged damage.

Following the damage sustained in December of 1978, the General Adjustment Bureau (GAB) was delegated to assess plaintiff's loss. Eddie Cole, an adjuster with GAB at the time, inspected the plaintiff's premises on January 26, 1979. Between that date and December of 1979, plaintiff and GAB communicated a number of times regarding the claim. On December 10, 1979, plaintiff received a letter from Mr. Vance Mills, branch manager of the GAB in Pine Bluff. That letter stated that,

as a result of Mr. Cole's investigation, plaintiff's loss was computed to be $918.17. Enclosed with the letter was a proof of loss form completed by Mr. Vance with the sum-claimed line totaled at $918.17. Mr. Vance requested that plaintiff sign the form, have it notarized and return it. The defendant admits that it was willing to pay plaintiff the sum of $918.17 for the December loss had he signed and returned the proof of loss as filled out by Mr. Vance. However, plaintiff did not return the proof of loss form in the condition it was sent to him. He objected to the amount of loss claimed and typed in his own figures over those of Mr. Vance, thereby claiming a loss of $7,711.27. Plaintiff returned the proof of loss form to Mr. Vance on January 25, 1980. It was rejected and thereafter defendant refused to make any payment on the claim. The record is clear that January 25, 1980, was the first and only time that plaintiff filed a proof of loss form for his December 1978 loss. It is also clear that the filled-in proof of loss form sent to plaintiff by Mr. Vance on December 10, 1979, was the first and only one, filled in or blank, plaintiff ever received from the defendant.

With respect to the alleged damage of May 10, 1979, the adjustment of that claim was delegated to Underwriters Adjusters Company (UAC) of Little Rock, Arkansas. By a letter dated November 12, 1979, Mr. William Hendrix, resident adjuster for UAC, informed plaintiff that his claim of loss for May 10, 1979, was denied because the loss was the result of a peril excluded under the policy; that is, the damage was not caused by a "flood." Plaintiff makes no claim, nor does the record show, that he ever filed a proof of loss statement for the alleged damage done on May 10, 1979.

As the single ground for its motion for summary judgment, the defendant asserts that the plaintiff failed to comply with the terms of the flood insurance policy because plaintiff did not file a proof of loss within sixty days after his loss. Therefore, defendant contends, plaintiff is precluded from pursuing his action, the proof of loss requirement being a condition precedent to bringing suit in federal court. As grounds for his cross motion, plaintiff asserts that he has complied with all provisions of the policy and the only issue before the Court is the question of damages.

The Court finds that the facts, other than those regarding damages, are not in dispute. The controversy concerns a question of law, and that question is whether failure to file a proof of loss within sixty days of the loss is a complete defense available to the Federal Emergency Management Agency under these facts.

The General Conditions and Provisions section of the SFIP issued to the plaintiff contains the following sections relevant to the proof of loss issue:

N. Requirements in Case of Loss—The Insured shall give written notice, as soon as practicable, to the Insurer of any loss, protect the property from further damage, forthwith separate the damaged and undamaged property and put it in the best possible order. Within 60 days after the loss, unless such time is extended in writing by the Insurer, the Insured shall render to the Insurer, a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss. The Insured, at the option of the insurer, may be required to furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed, and verified plans and specifications of any building, fix-

tures or machinery destroyed or damaged.

\*   \*   \*   \*   \*   \*

S. Action Against the Insurer—No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after the date of mailing of notice of disallowance or partial disallowance of the claim.

\*   \*   \*   \*   \*   \*

D. Added and Waiver Provisions—No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of the Insurer relating to appraisal or to any examination provided for herein.

The Code of Federal Regulations, 44 C.F.R. § 62.22(a), provides:

Upon the disallowance by the Federal Insurance Administration or the servicing agent of any claim on grounds other than failure to file a proof of loss, or upon the refusal of the claimant to accept the amount allowed upon any such claim, after appraisal pursuant to policy provisions, the claimant, within one year after the date of mailing by the Federal Insurance Administration or the servicing agent of the notice of disallowance or partial disallowance of the claim may, pursuant to 42 U.S.C. 4053, institute an action on such claim against the Director of the Federal Emergency Management Agency in the U.S. District Court for the district in which the insured property or the major portion thereof shall have been situated, without regard to the amount in controversy.

Defendant interprets these provisions to mean that, unless a written proof of loss is filed within sixty days of the insured's loss, the insured may not contest in a lawsuit any action taken by the defendant with respect to the insured's claim made under the policy. Defendant does not, however, contend that an insured's claim can never be processed and settled absent the tender of the proof of loss.

The issue, as it has been addressed in the reported cases, appears to be unsettled. Four district courts have held that failure to file a proof of loss automatically precludes an insured's recovery in a suit on the policy. In *Zeil Realty Corp. v. Director, FEMA,* 1982 Fire & Casualty Cas. 253 (S.D. N.Y.1981), the court granted summary judgment for the defendant because the insured had never filed a proof of loss, which the court held to be a condition precedent to bringing a suit under the policy. In *Harper v. National Flood Insurers Ass'n,* 516 F.Supp. 725 (M.D.Pa.1981), the court granted summary judgment on a finding that the insured not only failed to file the requisite proof of loss, but also did not file suit within the one year limitations period. The court in *Continental Imports, Inc. v. Macy, Director, FEMA,* 510 F.Supp. 64 (E.D.Pa.1981), held that the insured's failure to file a proof of loss precluded recovery on the suit despite the insured's argument that the denial of its claim acted as a waiver by FEMA. Finally, in *Cross Queen, Inc. v. Director, FEMA,* 516 F.Supp. 806 (V.I.1980), the court held that the insured's failure to file a proof of loss precluded its suit and estoppel by waiver could not be had against the government just because it had taken steps to evaluate the insured's loss and had made a settlement offer.

Six cases have held that failure to file a proof of loss does not automatically preclude an action on the flood insurance policy. The decisions were based on a number of theories. State law principles were relied upon in two of the earliest decisions. The court in *Jackson v. National Flood Insurers Ass'n,* 398 F.Supp. 1383 (S.D.Tex. 1974), held that conduct by the claims adjuster that misled the insured into believing no proof of loss was required and the denial of the claim both acted as estoppel by waiver against the government. In *Del Boring Tire Serv. v. FEMA,* 496 F.Supp. 616 (W.D.

Pa.1980), the court held that for a failure to file a proof of loss to preclude a suit on the policy, such a failure must prejudice the insurer in some way. A summary disposition of the issue was made in *Brennan v. FEMA,* 1981 Fire & Casualty Cas. 841 (D.Mass.1981). There, the court found the failure to file a proof of loss to be but a technical failure to comply with the policy. A more extensive analysis of the issue was offered in *Beck v. Director, FEMA,* 1982 Fire & Casualty Cas. 483 (N.D. Ohio 1981). In that case the insureds filed their proof of loss on the 67th day after the alleged loss. The court began its analysis by noting that the law abhors a forfeiture, and found that nothing in the SFIP indicated that an *untimely* filing of a proof of loss would cause a forfeiture of recovery. In a novel interpretation of the SFIP language, the court found that, although the filing of a proof of loss must be done in sixty days, filing it later than that time period does not compel a forfeiture, but simply postpones the time in which a suit may be brought. The *Beck* court distinguished the four contrary decisions, *supra,* by noting that in each a proof of loss was *never* filed, while in the *Beck* case the filing was only untimely. In short then, to bring suit under the provisions of the SFIP, the insured need only file a proof of loss at some time before the end of the one year period following disallowance of a claim. In *Pavone v. Sec. of HUD,* 1982 Fire & Casualty Cas. 1477 (D.Conn.1982), the court found that the submission by the insured within the sixty day time period of various documents and information entitled "notice of loss" constituted a question of fact as to whether a "proof of loss" had been filed. Finally, in *Meister Bros., Inc. v. Macy, Director of FEMA,* 674 F.2d 1174 (7th Cir.1982), the court of appeals held that under the facts of that case, the government could not assert the defense of failure to file a proof of loss when the insured had provided FEMA with all the information it would have had if a proof of loss had been filed and partial payment had been made on the untimely filed proof of loss.

A clear rule of law cannot be distilled from these cases. While some distinction can be made between a situation where a proof of loss is never filed and one where it is only untimely filed, that distinction alone would not seem controlling. Likewise, whether and how far a claim has been processed toward completion does not entirely differentiate these cases. What the cases appear to imply is that whether an untimely filed proof of loss will preclude suit on a SFIP will depend upon the facts of each case and how each court interprets the general principle that estoppel cannot be had against the government. In that respect, an understanding of the latter is required.

■ As a general rule, estoppel may not be asserted against the government. *See, e.g., United States v. One 1973 Buick Riviera Automobile,* 560 F.2d 897 (8th Cir.1977). However, "the courts have criticized and cut away at this notion in recent years." *United States v. Bailey,* 467 F.Supp. 925, 928 (E.D.Ark.1979) (allowing the use of estoppel against the Army Corps of Engineers). The Supreme Court recently addressed the issue in *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (failure to file timely application for Social Security benefits). The Court there appeared to simply restate the maxim when it found that the particular facts of that case precluded the use of estoppel. It did not establish any clear standard by which to assess the circumstances where estoppel may or may not be asserted against the government. Nevertheless, there is language in that opinion that would indicate that estoppel against the government might be asserted where the government agent acts to "cause respondent to take action . . . or fail to take action . . . that respondent could not correct at any time." *Hansen* at 789, 101 S.Ct. at 1471 (citations omitted).

The type of situation addressed by the Court in *Hansen* lends itself particularly well to an analysis predicated on this language. There, as in many of the supporting cases the Court cited, an individual was misinformed by an agent of the government about eligibility for Social Security benefits and therefore failed to file a timely

application. The resultant injury was a loss of benefits for the time period between when the application could have been filed, but for the misinformation, and when it was actually filed and benefit payments had begun. It is clear then that the claimant's failure to act was correctable at any given time, though some loss of benefits was incurred up until the application was filed.

■ In the present case, a failure to act by filing the proof of loss within the required time period was not "correctable at any time." Rather, the SFIP and Congressional regulations expressly preclude the bringing of a suit on the policy even if a proof of loss is filed after the sixty day time limit has elapsed. In the instant case plaintiff failed to file a timely proof of loss because he was not tendered a form by the GAB, and he relied on its processing of his claim without the need for a formal proof of loss. Indeed, it is arguable that GAB's investigation of the claim constituted an implied representation that no further or formal proof of loss was required. Under the preceding interpretation of *Hansen,* this Court finds that the government would be estopped from preventing plaintiff from bringing suit on the policy despite its language and the applicable regulations.

While the Court views this conclusion to properly flow from its analysis of *Hansen,* it is not content to rely on this predicate alone for its conclusions of law. At a minimum though, the present case is one where plaintiff cannot correct his failure; therefore, under *Hansen,* estoppel is not necessarily precluded. But because that case did not pass on the broad question of what type of conduct by a government agent would estop the government from insisting upon compliance with its valid regulations, this Court must look to case law and other authority from which to find a workable standard. Federal law, of course, controls in this case. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979); *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 383, 68 S.Ct. 1, 2, 92 L.Ed. 10 (1947).

This Court recognized the evolving character of estoppel against the government in *United States v. Bailey, supra.* For this case, as in *Bailey,* a fair summary of the estoppel argument is found in Annotation, Modern Statutes of Applicability of Doctrine of Estoppel Against Federal Government and Its Agencies, 27 ALR Fed. 702, 710, and reads as follows:

> Estoppel or no estoppel against the government was traditionally, and in some cases still is, made to depend upon the distinction between performance of a governmental as distinguished from a proprietary function, and upon the agent's conduct as within or beyond the scope of his authority in a particular situation. In some recent cases, however, the courts have turned away from these traditional pigeonholes, and considered the basic question of what is justice in a particular situation, concerning themselves only with determining whether the proper elements of an equitable estoppel were present, and whether recognition of the equities to estop the government will harm the public's interests.

■ The case law also supports a standard for allowing the use of estoppel against the government under certain circumstances where its conduct threatens to work a serious injustice and the public interest would not be unduly damaged by the imposition of estoppel. *See United States v. Lazy FC Ranch,* 481 F.2d 985, 989 (9th Cir.1973) ("The estoppel doctrine is applicable to the United States where justice and fair play require it."); *United States v. Fox Lake State Bank,* 366 F.2d 962, 965 (7th Cir.1966) ("In proper circumstances the doctrine [of estoppel against the government] does apply."); *Massaglia v. Commissioner of Internal Revenue,* 286 F.2d 258, 262 (10th Cir.1961) ("The very nature of government operations requires us to apply the principles of estoppel to its conduct with circumspection.... At the same time, we will not allow the government to deal dishonorably or capriciously with its citizens. It must not play an ignoble part or do a shabby thing."); *Kizas v. Webster,* 492

F.Supp. 1135, 1145 (D.D.C.1980) ("Nor is there any longer a doubt that the Government, like any private person or institution, can in certain circumstances be bound through principles of estoppel and implied contract.").

■ With the above analytical framework in mind, the circumstances of this case can be addressed. To begin, the Court notes the government interests involved here. The broad congressional purpose in establishing the national flood insurance program was to alleviate the personal hardship and economic distress created by flood damage by making flood insurance coverage available on "reasonable terms and conditions" to those persons needing such protection which private insurers alone could not economically make available. 42 U.S.C. § 4001(a), (b). This Court must construe the provisions of the SFIP in light of its purpose to make flood insurance coverage available under "reasonable conditions." The more narrow purpose of requiring that a proof of loss be filed within the sixty day period was stated by the Director of FEMA in the *Brennan v. FEMA* case. "The proof of loss requirement was included in order to provide the insurer with the full opportunity to investigate and defend every claim, and to permit an intelligent estimate of its rights and liabilities." *Brennan* at 843. Given these purposes of the insurance program in general and the proof of loss requirement in particular, can it be said that failure to file a timely proof of loss will *per se* preclude recovery on the policy in a civil action? This Court thinks not.

■ The Seventh Circuit Court of Appeals decision in *Meister Bros., supra,* is highly persuasive in resolving the legal issue presented in this case. The facts in that case are almost identical to those in the instant case with one exception. There the government actually paid part of the claim despite claimant's failure to file a proof of loss. The failure to file a proof of loss defense was not raised until suit was brought by the claimant to collect on the disputed remainder of the claim. In this case, however, although actual payment was not made, the government has admitted that it was ready and offered to pay plaintiff at least $918.17 on the December 1978 claim, and would have paid had plaintiff not rejected the offer. Furthermore, the GAB had investigated the plaintiff's December 1978 claim, gathered enough information to enable it to compute a loss amount as if a proof of loss had been filed, and offered to pay that amount to the plaintiff. This Court holds, therefore, that under the unique circumstances of the December 1978 claim and its treatment, the government agency "will not be permitted belatedly to assert a technical defense to a law suit which admittedly, if it had been in a state court against a private insurance carrier, would not have prevailed. The Agency was not in any sense acting in a sovereign capacity here but was engaged in essentially a private business." The agency will not be permitted to withdraw from a "position clearly and unambiguously taken." *Meister Bros.* at 1177. The Court finds that the injury to the plaintiff in this case would be great if estoppel were denied, while injury to the public treasury and weakening of the purpose underlying the proof of loss requirement would not only be small, but, if estoppel were not allowed, the public interest in compensating individuals for flood damage would suffer: a victim of flood damage would be unjustly precluded from being compensated contrary to the objective of the legislation. The Court clearly does not hold that every failure to file a timely proof of loss will not preclude civil actions on the policy, but makes its holding only with respect to the special facts of this case. In that light, the plaintiff's failure to file any proof of loss for his alleged damage in May 1979, coupled with the agency finding that his damage was caused by an excludable peril—a finding not rebutted by the plaintiff—does preclude him from bringing a civil action on the denial of his May 1979 claim.

In conclusion, this Court finds that the plaintiff may maintain his suit on the policy with respect to the alleged damages which occurred on December 10, 1978. Because

the defendant has admitted that there occurred on that date a temporary condition of flooding at plaintiff's residence, the sole issues remaining in this case are whether plaintiff's alleged damage was caused by the flooding and, if so, the amount of the damage sustained. Those are questions of fact that must be determined at trial.

It is therefore Ordered that defendant's motion for summary judgment on its liability for the May 10, 1979 occurrence be, and it is hereby, granted, and its motion for summary judgment on its liability for the December 10, 1978 occurrence be, and it is hereby, denied. It is further Ordered that plaintiff's motion for summary judgment on his right to maintain his suit on the December 10, 1978 occurrence be, and it is hereby, granted, but plaintiff's motion for summary judgment on his right to maintain his suit on the May 10, 1979 occurrence and the questions of causation and damages for the December 10, 1978 occurrence be, and it is hereby, denied.