Sallie HOWARD, Plaintiff,

v.

DIRECTOR, Federal Emergency
Management Agency,
Defendant.

Civil Action No. 3:96–CV–530BN.

United States District Court,
S.D. Mississippi.

Dec. 30, 1996.

Jessie L. Evans, Blackmon, Blackmon & Evans, Canton, MS, for plaintiff.

Mitzi Dease Paige, U.S. Attorney's Office, Jackson, MS, for defendant.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. Having considered the Motion, Plaintiff's Response, Defendant's Reply, all attachments to each, and supporting and opposing memoranda, the Court finds that the Motion is well taken and should be granted.

### I. *Background and Procedural History*

This case arises out of the denial of benefits by the Defendant, the Federal Emergency Management Agency ("FEMA"), under a Standard Flood Insurance Policy ("SFIP") issued to the Plaintiff, Sallie Howard ("Howard"). Howard purchased policy number 1–9372–5009–8 from a local insurance agency, Shackleford Bros. and Fortenberry, Inc. ("Shackleford"), to insure her home located at 3210 South Liberty Street, Canton, Mississippi, with coverage up to $12,100 for the dwelling and $5,600 for the contents of the dwelling. The policy was effective from June 7, 1994, through June 7, 1995.

On April 20, 1995, Bear Creek flooded near Howard's home, and water from the creek rose around Howard's home and flowed into the interior of her home.[1] On April 21, 1995, Howard, through her insurance agent,

---

1. FEMA concedes that there was a flood, although no evidence has been presented to support this contention. Plaintiff has submitted a document entitled National Flood Insurance Program Preliminary Report. *See* Exhibit 1 to Plaintiff's Response. The document purportedly is signed by Jeff McGill, the claims adjuster who inspected Howard's home after the flood. Plaintiff, however, has not authenticated this document in any manner. Therefore, it should not be considered as evidence to oppose Defendant's Motion. Because FEMA concedes that a flood occurred, the Court will assume that there was a flood, and that as a result, some amount of water entered the Plaintiff's home. FEMA does not concede that the 1995 flood caused any damage to Howard's home or its contents.

Shackleford, filed a notice of loss informing the National Flood Insurance Program ("NFIP") that she had sustained a flood loss. See Declaration of James S.P. Shortley at 2, ¶ 4, attached as Exhibit 1 to Defendant's Motion (hereinafter "Shortley Declaration"), and Exhibit B attached thereto; *see also* Plaintiff's Affidavit, ¶ 7, attached as Exhibit 3 to Plaintiff's Response. The claim was assigned to Charter Adjustment Company ("Charter"), and Jeff McGill was the claims adjuster assigned to inspect the Plaintiff's home. Shortley Declaration at 2, ¶ 4.

McGill investigated Howard's claim by inspecting her home.[2] According to Howard, McGill told her that she needed to get some estimates concerning the damage to her home. Plaintiff's Affidavit at 3, ¶ 9. McGill had also investigated a previous claim by Howard from a flood in 1994. After completing his inspection of Howard's home due to the 1995 flood, McGill determined that at least some of the damage to Howard's home from the 1994 flood did not appear to have been repaired. Shortley Declaration at 2–3, ¶ 6 and Narrative Report prepared by McGill, attached as Exhibit E thereto.[3] Charter then requested documentation from Howard, in the form of "cancelled checks, material receipts, inspection reports, contractor agreements, or any other type of documentation," to verify that the flood damage from 1994 had indeed been repaired. See Letter from Charter to Howard, attached as Exhibit F to Shortley Declaration. Plaintiff alleges that she did not have any proof that the repairs for the 1994 flood damage had been completed because "a lot of [her] papers had been damaged or destroyed" by the April, 1995, flood. Plaintiff's Affidavit, ¶ 10.

Meanwhile, on May 9, 1995, a claims examiner for National Con–Serv, Inc. ("National Con–Serv"), the servicing agent for the

NFIP, sent a letter to Howard advising her that her flood policy required that a Proof of Loss be filed:

> Your flood policy requires that a formal Proof of Loss be filed within sixty (60) days of the loss date. If this is not done, the terms and conditions of the policy would be violated and your claim could be denied. Your deadline for filing a Proof of Loss for the above captioned claim is 6/20/95.
>
> This letter is to inform you that you have until the above date to conclude your claim with the adjuster and file your Proof of Loss with us. If we have not received the Proof of Loss within the allotted time mentioned above, we will assume that you are not pursuing your claim and will close your file without further activity.

May 9, 1995, National Con–Serv Letter, attached as Exhibit C to Shortley Declaration. National Con–Serv sent Howard a second letter on June 20, 1995, which contained virtually identical language to the May 9, 1995, letter. The only difference is that the second letter stated that Howard would have ten days from the date of the letter in order to file her Proof of Loss. June 20, 1995, National Con–Serv Letter, attached as Exhibit D to Shortley Declaration. It should be noted that the requested Proof of Loss is a different document than the Notice of Loss filed for the Plaintiff by her insurance agent.

At some point prior to the final denial of her claim, Howard apparently sent an unsworn statement from Leroy Joyner to National Con–Serv which states as follows:[4]

> This will certify that we, me and my brother, Prentis Harris, did perform the work on her house located above, per our estimate dated 3/7/94. We furnished the materials and Sallie Howard paid us cash,

2. The date of the inspection is not included in any competent evidence submitted by the parties. As noted previously, *see supra* note 1, Plaintiff submitted a document entitled National Flood Insurance Program Preliminary Report, purportedly signed by McGill, which is dated April 29, 1995.

3. Howard makes various allegations in her affidavit concerning the 1994 flood and the failure of FEMA to pay her in a timely manner and to pay her the full amount of the loss. Plaintiff's

Affidavit at 1–3. The Court finds that these allegations are not relevant to the instant Complaint, except as they pertain to whether Howard had the previous flood damage repaired.

4. This "statement" is attached to Plaintiff's Response as Exhibit 4. However, like many of the attachments to that Response, it is not authenticated in any manner and is only mentioned in the Plaintiff's memorandum in support.

as we completed this job. My brother, Prentis Harris is in Massassachusets [sic] with our sick father. This will acknowledge receipt of $5,000.00 cash for this job.

The receipts have been misplaced for the purchase of materials, as no one was advised they should be kept.

Joyner Statement, attached as Exhibit 4 to Plaintiff's Response.

On July 27, 1995, National Con–Serv sent a denial letter to Howard which states in relevant part as follows:

We have received the report from the adjuster documenting your above captioned claim.

The report advised us that the inspection of your property appeared to show that the repairs have not been completed from the prior loss. The adjuster has requested receipts and/or invoices to confirm that the repairs have been completed, but to date, none have been received.

Your loss has exceeded the sixty (60) days for filing the Proof of Loss. Therefore, we are denying the claim and closing the file without payment for failure to pursue the claim.

You have one (1) year from the date of this denial to file suit in the U.S. District Court for the district in which the insured property was located at the time of the loss.

July 27, 1995, National Con–Serv Letter, attached as Exhibit G to Shortley Declaration. After receiving this denial, Howard employed counsel to represent her in this matter. Her attorney wrote a letter to National Con–Serv on her behalf on January 10, 1996, although neither party submitted this letter to the Court. In response, National Con–Serv sent a letter to Howard's counsel in reply:

We are in receipt of your letter of 1/10/96 concerning the denial of the above claim.

We must advise you that after comparing the prior loss in 1994 file with the above, documents were requested to verify the repairs were made prior to the above

loss. We were informed that the insured had no paid receipts, but a hand written letter was provided from Mr. Joyner stating that he and his brother had completed the repairs in 1994. Since the letter was written by hand and was not on a business letter head, numerous attempts were made to [contact] Mr. Joyner & Mr. Harris for verification of the letter. We reached Mr. Harris on 1/30/96, and he informed me that he had made no repairs to the damages from the flood, that he repaired only the roof. He also informed me that Mr. Joyner was not his brother and that he did not know him.

Based on this information the only document received to support the above claim is not valid. Our denial must stand. However, if the insured can provide valid support (ie: paid receipts, canceled checks (back & front)) we will be happy to review the file again.

Waiving none, but reserving all rights and defenses under our policy, we remain. . . .

February 1, 1996, National Con–Serv Letter, attached as Exhibit H to Shortley Declaration.

Howard asserts in her affidavit that during the time frame when these letters were being sent, the summer of 1995, that she was hospitalized at Madison General Hospital for approximately two months, and was subsequently hospitalized at Methodist Hospital in Jackson, Mississippi, for another month. Howard does not provide an exact date for these hospitalizations. Howard acknowledges the receipt of the letters and asserts that she had a friend deliver them to Shackleford, her insurance agent, because she was not sure what the letters meant. Howard understood, however, that the insurance company "was not intending to pay [her] claim based on calls [she] received while hospitalized from Shackleford Brothers." Plaintiff's Affidavit, ¶ 12. Howard also asserts that "only one inspection was made by the insurance company of my home following the April 1995 flood." *Id.* at 4, ¶ 13.[5]

---

**5.** In her Memorandum of Law in Support of her Response, Howard alleges many "facts" which are not in evidence and have not been properly

presented into evidence by either party. Because Rule 56(c) of the Federal Rules of Civil Procedure requires the Court to consider "pleadings,

## II. *Regulatory Scheme*

FEMA is charged with administering the National Flood Insurance Program ("NFIP"), by which flood insurance is made available to the public.[6] Although FEMA uses the services of a private corporation as a fiscal servicing agent,[7] the Federal Insurance Administration ("FIA"), acting under the authority of FEMA, is ultimately responsible for handling all NFIP insurance policies.

The Director of FEMA is responsible for providing "by regulation for general terms and conditions of insurability which shall be applicable to properties eligible for flood insurance coverage...." 42 U.S.C. § 4013(a). Such regulations have been promulgated and are contained in 44 C.F.R. §§ 59.1–77.2 (1993).[8] The regulations provide that all insurance offered pursuant to the NFIP is subject to the Act, the regulations issued under the Act and the terms and conditions of the SFIP. 44 C.F.R. § 61.4(a). The regulations further provide that the SFIP must be used for the NFIP, and that "no provision of the said documents shall be altered, varied, or waived other than through the issuance of an appropriate amendatory endorsement, approved by the Administrator as to form and substance for uniform use." *Id.* § 61.13(d).

The SFIP is included in the regulations as Appendix A(1) to 44 C.F.R. Part 61.[9] Several provisions of the SFIP are relevant to this action. Similar to the regulations promulgated pursuant to the Act, the SFIP also includes a waiver provision which prohibits any amendment or waiver of any provisions of the policy "without the express written consent of the Federal Insurance Administrator." SFIP, art. VIII, ¶ D.

The most important provision of the SFIP, at least in regard to this matter, is the provision setting forth the requirements in case of a loss:

I. *Requirements in case of loss:* Should a flood loss occur to your insured property, you must,

1. Notify us in writing as soon as practicable;

2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it; and

3. *Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you and furnishing us with the following information.*

a. The date and time of the loss.

b. A brief explanation of how the loss happened,

c. Your interest in the property damaged (for example, "owner") and the interests, if any, of others in the damaged property,

d. The actual cash value of each damaged item of insured property after depreciation is deducted from the cost of replacement of the property ...,

e. Names of mortgagees or anyone else having a lien, charge or claim against the insured property,

---

depositions, answers to interrogatories, and admissions on file, *together with the affidavits, if any,*" to determine whether any genuine issues of material fact exist, the Court will not consider factual allegations asserted in Plaintiff's Memorandum in Support which have no basis in the record. Fed.R.Civ.P. 56(c) (emphasis added).

**6.** Congress enacted the National Flood Insurance Act ("the Act") in 1968, 42 U.S.C. §§ 4001–4128, authorizing the creation of the NFIP "with large-scale participation of the Federal Government and carried out to the maximum extent practicable by the private insurance industry...." 42 U.S.C. § 4001(b). The Act was enacted in response to Congressional concern over the "enor-

mous personal hardship and economic distress caused by flood disasters." *Humphrey v. National Flood Ins. Program,* 885 F.Supp. 133, 134 (D.Md.1995).

**7.** As noted previously, National Con–Serv is the private corporation under contract with FEMA as the servicing agent for the NFIP.

**8.** The 1993 regulations are applicable to the circumstances of this case because of the date the SFIP policy at issue in this case was in effect.

**9.** Any subsequent citations to the policy will not include the C.F.R. sections, but will be cited as "SFIP, art. ——, ¶ ——."

f. Details as to any other contracts of insurance covering the property, whether valid or not,

g. Details of any changes in ownership, use, occupancy, location or possession of the insured property since the policy was issued,

h. Details as to who occupied any insured building at the time of loss and for what purpose, and

i. The amount you claim is due under this policy to cover the loss, including statements concerning:

(i) The limits of coverage stated in the policy,

(ii) The cost to repair or replace the damaged property (whatever costs less).

SFIP, art. VII, ¶¶ f(1)-(3) (emphasis added). This specific provision of the SFIP explains further the obligations of the insured and FEMA with regard to the filing of a proof of loss:

4. The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you to complete it. *However, this is a courtesy only. and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.* In completing the proof of loss, you must use your own judgment concerning the amount of loss and the justification for that amount; the adjuster is not authorized to approve or disapprove claims or to tell you whether your claim will be approved by us.

5. We may, at our option, waive the requirement for the completion and filing of a Proof of Loss in certain cases, in which event you will be required to sign and, at our option, swear to an adjuster's report of the loss which includes information about your loss and the damages needed by us in order to adjust your claim.

SFIP, art. VIII, ¶¶ I(4) and (5) (emphasis added).

Finally, both the SFIP and the regulations contain provisions concerning the filing of a lawsuit. The SFIP contains the following provision:

Q. *Conditions for filing a lawsuit:* You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within twelve (12) months from the date we mailed you notice that we have denied your claim, or part of your claim, and you must file the suit in the United States District Court for district [sic] in which the insured property was located at the time of the loss.

SFIP, art. VIII, ¶ Q. Similarly, the regulations contain a subsection entitled "Judicial review" which provides that:

Upon the disallowance by the Federal Insurance Administration or the servicing agent of any claim *on grounds other than failure to file a proof of loss,* or upon the refusal of the claimant to accept the amount allowed upon any such claim, after appraisal pursuant to policy provisions, the claimant within one year after the date of mailing by the Federal Insurance Administration or the servicing agent of the notice of disallowance or partial disallowance of the claim may, pursuant to 42 U.S.C. 4072, institute an action on such claim against the Federal Insurance Administrator in the U.S. District Court for the district in which the insured property or the major portion thereof shall have been situated, without regard to the amount in controversy.

44 C.F.R. § 62.22(a) (emphasis added).

### III. *Legal Standard*

Defendant's Motion is styled as one to dismiss for failure to state a claim for relief, or in the alternative, for summary judgment. Although motions to dismiss and motions for summary judgment are interrelated and are often asserted in the alternative, there are differences in the legal standards applied for deciding the two motions. The purpose of a Rule 12(b)(6) motion to dismiss is to test the statement of the claim for relief as set out in the complaint. *See Murray v. Amoco Oil Co.,* 539 F.2d 1385, 1387 (5th Cir.1976). The motion may be granted " 'only if it appears that no relief could be granted under any set of facts that could be proved consistent with

the allegations.'" *Barrientos v. Reliance Standard Life Ins. Co.,* 911 F.2d 1115, 1116 (5th Cir.1990) (quoting *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986)), *cert. denied,* 498 U.S. 1072, 111 S.Ct. 795, 112 L.Ed.2d 857 (1991). Thus, in considering a motion to dismiss, the inquiry is limited to the contents of the Plaintiff's Complaint. *Jackson v. Procunier,* 789 F.2d 307, 309 n. 4 (5th Cir.1986).

In contrast, a motion for summary judgment goes beyond the pleadings and tests the sufficiency of the evidence a party can produce in support of those issues on which it will bear the burden of proof at trial. Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the

non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. at 2552–53. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962). Because the parties have submitted and the Court has considered materials outside of the pleadings, the Court will analyze Defendant's Motion as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed.R. Civ.P. 12(b)(6); *Murphy v. Inexco Oil Co.,* 611 F.2d 570, 573 (5th Cir. 1980); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir.1991).

### IV. *Analysis*

■ FEMA asserts that Plaintiff's failure to file a proof of loss requires this Court to dismiss this action. Defendant notified the Plaintiff on two separate occasions concerning the SFIP requirement of a proof of loss, but Plaintiff never submitted a proof of loss to Defendant. Defendant further asserts that Howard failed to provide any evidence of her loss after being requested to do so by National Con–Serv.[10] Finally, FEMA asserts that costs and attorney fees cannot be recovered against the federal government, and because FEMA is an agency of the

---

**10.** Specifically, National Con–Serv, on behalf of FEMA, requested proof from the Plaintiff that the damage caused by the 1994 flood had in fact been repaired, so that FEMA would not be pay-

ing benefits a second time in 1995 to repair damage which occurred due to the 1994 flood and was never repaired.

federal government, Plaintiff's claims in this regard should be dismissed.

Plaintiff asserts that the requirement that she file a formal proof of loss is simply a pretext for denying her claim because the claims adjuster who inspected her home after the flood observed that there had been a loss. Plaintiff also argues that if she produced a proof of loss that her claim would be denied anyway. Plaintiff's circular reasoning in this regard is that:

> [I]f plaintiff produced the so-called proof of loss, because she could not produce proof satisfactory to defendant of prior repairs, the claim would be denied. On the other hand, if plaintiff produced proof of prior repairs and although defendant had verified the damage to plaintiff's home, her claim would still be denied because she was still being required to produce the same proof that defendant's agent had already verified.

Plaintiff's Memorandum of Law in Support at 6. Plaintiff further alleges that Defendant did not require a proof of loss until it had decided to deny the claim on the suspicion that the repairs for damage from the 1994 flood had not been made. Even after requiring that a proof of loss be submitted, according to the Plaintiff, the Defendant did not inform the Plaintiff what information should be included in the proof of loss and did not provide a proof of loss form for her to complete. Finally, Plaintiff argues that no policy was issued to her "advising her that a proof of loss might be required under certain circumstances." Plaintiff's Memorandum of Law in Support at 6.[11] With regard to the issue of attorney's fees, Plaintiff asserts that she may be entitled to such fees pursuant to the Equal Access to Justice Act which requires a showing that the position of the Defendant is substantially unjustified or that special circumstances would make an award of attorney's fees unjust. Because the possibility exists that she may recover attorney's

fees, Howard asserts that her claim for such fees should not be dismissed at this point.

In rebuttal, Defendant asserts that Howard's arguments in her brief are not competent summary judgment evidence and that several of the affidavits attached to her Response should be stricken. Defendant further asserts that because Plaintiff has admitted that she failed to file a proof of loss, this action should be dismissed. Defendant has submitted the Declaration of Donald Beaton to rebut Plaintiff's argument in her Memorandum in Support that she never received a copy of the SFIP. Beaton states that "[i]t is standard FIA policy and the FIA's routine practice to send a copy of the Standard Flood Insurance Policy ('SFIP') to an insured when a new NFIP policy is purchased from FEMA." Beaton Declaration, ¶ 3, attached to Defendant's Reply. Finally, Defendant asserts that Plaintiff has not met the high standard required to establish estoppel against FEMA, an agency of the federal government.

The Court finds that no genuine issues of material fact have been properly presented by the Plaintiff, and that summary judgment should therefore be granted to the Defendant. Plaintiff does not contest the fact that she failed to file a proof of loss. Rather, Plaintiff essentially asserts that FEMA should be estopped from denying coverage based upon the SFIP provision requiring that a proof of loss be filed because of the actions of its employees in this matter.[12] The Court finds that Plaintiff has failed to submit any evidence to support her argument that FEMA should be estopped from requiring compliance with the terms of the SFIP policy.

Because no "test" for establishing estoppel against the government has been set forth in this circuit, the Court adopts the test set forth by the United States Court of Appeals for the Ninth Circuit in this regard:

---

**11.** Plaintiff has offered no evidence to support this argument which only appears in her Memorandum in Support.

**12.** While Plaintiff does not phrase her argument as one for estoppel, the cases upon which she relies are based upon estoppel against the federal government or one of its agencies. The Court

will therefore proceed under the assumption that Plaintiff is arguing that FEMA should be estopped from denying her claim for benefits under the policy based upon her failure to comply with the SFIP provision requiring that a proof of loss be filed.

A party seeking to raise estoppel against the government must establish "affirmative misconduct going beyond mere negligence"; even then, "estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." ... "A mere failure to inform or assist does not justify application of equitable estoppel." *Wagner v. Director, Federal Emergency Management Agency*, 847 F.2d 515, 519 (9th Cir.1988). *Wagner* involved the denial of flood insurance benefits to several plaintiffs, most of whom had filed formal proofs of loss, although not in a timely manner. *Id.* at 517. Plaintiffs asserted that FEMA should be estopped from asserting as a defense the plaintiffs' failure to file timely proofs of loss because FEMA did not initially assert this procedural requirement as the reason for the denial of the plaintiffs' claims. *Id.* at 518–19. The district court agreed with the plaintiffs, concluding that "estoppel was appropriate because plaintiffs' interest in obtaining flood insurance benefits outweighed FEMA's interest in enforcement of this 'stunted technicality.'" *Id.* at 519. The Ninth Circuit disagreed, however, citing the test for estoppel set forth previously in this opinion. The court concluded that:

> The record is devoid of any misrepresentations by FEMA amounting to "affirmative misconduct." Plaintiffs' failure to file the proofs of loss is based entirely on their own confusion about whether FEMA would hold them to the requirement of a timely proof of loss. This confusion persisted in the face of FEMA's repeated instructions that claimants must comply with the SFIP's requirements, instructions based on lawfully promulgated regulations.

*Id.*

As noted previously,[13] the SFIP policy requires that a sworn proof of loss be filed within sixty days after the loss as a prerequisite to receive benefits for damage to covered property caused by a flood. SFIP, art. VIII, ¶ I(3). Howard does not dispute that she did not file a proof of loss. Howard asserts, however, that she should not have been required to file a proof of loss because the claims adjuster who inspected her property observed that she had a loss, and because FEMA has all of the information which would be contained in a proof of loss. This argument is not convincing. FEMA correctly asserts that the proof of loss is required by the provisions in the SFIP. Furthermore, FEMA was not required to send a proof of loss form to Howard, nor was it required to inform her that a proof of loss is required, although Howard was so informed by two letters on May 9, 1995, and June 20, 1995. *See* Exhibits C and D attached to Shortley Declaration. Even though the claims adjuster may have observed damage to Howard's home caused by the flood, Howard was still obligated under the provisions of the SFIP to submit a sworn statement of the amount of her loss. SFIP, art. VIII, ¶ I(3).

The Court further finds that the cases upon which Howard relies are factually distinguishable from this matter. For example, in *Meister Bros., Inc. v. Macy*, 674 F.2d 1174 (7th Cir.1982), the court found that the director of FEMA should be estopped from asserting the untimely filing of a proof of loss as a defense to the plaintiff's claim. *Id.* at 1177. The claims adjuster in *Meister Bros.* stated that it was not his practice to prepare a proof of loss until the parties reached an agreement on the amount of the loss. *Id.* at 1176. The court noted that its holding should be limited to the particular facts of that case where the agency paid a part of the claim under a policy which it treated as being fully applicable to the entire claim, then over a several month time period decided to withdraw from a position which it had clearly and unambiguously taken. *Id.* at 1177. The court also recognized that "generally oral misinformation provided by a government employee does not provide a basis for estoppel against the Government." *Id.* (citations omitted).

Plaintiff also relies upon *Reeves v. Guiffrida*, 756 F.2d 1141 (5th Cir.1985), to support her position. In that case, the plaintiff failed to file a proof of loss within sixty days of the date of the loss. *Id.* at 1142–43. The plain-

---

**13.** *See supra* at 8–10.

tiff asserted that he was told by the claims adjuster who inspected his home that all conditions of the policy "had been complied with and that FEMA's determination would be forthcoming." *Id.* at 1142. After FEMA denied plaintiff's claim, another adjuster visited his home and assured the plaintiff that his claim would be reevaluated. *Id.* The Fifth Circuit recognized that a plaintiff who invokes "estoppel against the government for the acts of its agents bears a heavy burden of proof." *Id.* at 1144. The court then held "only that it does not 'appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

In this matter, the facts are not in dispute. Although Howard is not well educated and was ill at the time of the 1995 flood, she acknowledges receiving letters from which she understood that "the insurance company was not intending to pay my claim...." Howard Affidavit at 4, ¶ 12. Furthermore, the letters Howard received were delivered to Shackleford, her local insurance agent, because she was unsure of their meaning. Howard stated that she told the Shackleford employee that she "did not have the kind of proof the insurance company wanted...." However, as evidenced by the letter submitted by the Plaintiff as Exhibit 6 to her Response, she had submitted estimates for the flood damage in 1994, and "refused the Proof of Loss in the amount of $1,376.99." [14]

March 7, 1994, Letter from Charter to Shackleford, attached as Exhibit 6 to Plaintiff's Response. This letter is evidence that Howard knew what a proof of loss form was, and that she knew such a form must be signed by her before she could receive any benefits under the SFIP.

Howard also acknowledges that she did not file and has not filed a proof of loss form, although she was given several opportunities to file such a form. Furthermore, Howard does not assert that any agent of FEMA made any misrepresentations to her concerning benefits under the SFIP. Howard has similarly not offered any evidence that the proof of loss provision was waived by any FEMA representative. *See* SFIP, art. VIII, ¶ D (SFIP provisions may not be amended or waived "without the express written consent" of the FIA); *Mason Drug Co., Inc. v. Harris,* 597 F.2d 886, 888 (5th Cir.1979) (concluding that "the doctrine of waiver cannot be applied to provide coverage where coverage does not exist under, or is excluded by, the policy contract"). Finally, although Howard asserts in her Memorandum of Law in Support that she never received a copy of the SFIP, she does not submit any evidence to support this assertion and does not even make this assertion in her affidavit. Faced with such overwhelming evidence, the Court finds that Howard has failed to create any genuine issue of material fact which would preclude summary judgment in favor of FEMA.[15]

14. From the language of this letter, it appears that a proof of loss was submitted to Howard for her signature for her claim of flood damage in 1994. As noted previously, however, the SFIP does not require that such a form be submitted to the insured. SFIP, art. VIII, ¶ I(4) (stating that if the insurance adjuster furnishes a proof of loss form, the form is furnished as "a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it").

15. Because the Court finds that summary judgment should be granted to FEMA, the Court will not rule upon the Motion to Strike the Exhibits Attached to Plaintiff's Memorandum in Response. The Court notes, however, that most of the affidavits submitted by the Plaintiff, including her own, contain only conclusory allegations and

lack the factual specificity necessary to survive a motion for summary judgment. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (concluding that factual controversies are resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts;" thus, conclusory allegations, unsubstantiated assertions and only a scintilla of evidence will not defeat a properly supported motion for summary judgment); *Hopper v. Frank,* 16 F.3d 92, 97 (5th Cir.1994) (concluding that the affidavits submitted by the plaintiffs, containing conclusory allegations, did "not reflect an explicit and clear assertion—much less 'evidentiary documents ... set[ting] out specific facts'" which would create a genuine issue of material fact sufficient to survive a motion for summary judgment) (citations omitted).

FEMA also asserts that Howard is precluded from filing suit because she failed to comply with all the requirements of the SFIP, see SFIP, art. VIII, ¶ Q, and because the regulations promulgated pursuant to the NFIP preclude such review. See 41 C.F.R. § 62.22(a) (setting forth the procedure for filing suit in federal court upon the disallowance of a claim by FEMA on grounds "other than failure to file a proof of loss"). Because the Court has considered all of the evidence presented, the Court has analyzed Defendant's Motion as one for summary judgment. The Court will therefore not address Defendant's argument that the regulations prohibit judicial review of this matter due to Howard's failure to file a proof of loss. The Court also need not address the issue of Plaintiff's claim for attorney's fees because the Court has found that FEMA is entitled to summary judgment.

### V. *Conclusion*

For the reasons set forth in this opinion, the Court finds that the Plaintiff, Sallie Howard, failed to submit a proof of loss as required by the flood insurance policy, the SFIP, issued to her by the Defendant. The Court further finds that FEMA did not waive the SFIP provision requiring that a proof of loss be filed. Finally, the Court finds that Howard has not submitted any evidence that FEMA should be estopped from asserting as a defense in this matter Howard's failure to file a proof of loss as required by the SFIP. For these reasons, the Court finds that FEMA is entitled to summary judgment in this case.

IT IS THEREFORE ORDERED that the Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment should be and hereby is granted.

A Final Judgment consistent with this Opinion and Order will be entered on this date.