PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HOWARD G. DAWKINS, JR., M.D.;
ANNETTE DAWKINS,
          *Plaintiffs-Appellants,*

       v.

JAMES LEE WITT, Director of the
Federal Emergency Management
Agency,
          *Defendant-Appellee.*

No. 99-1422

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
James C. Fox, Senior District Judge.
(CA-98-124-F3-4)

Argued: March 1, 2000

Decided: February 3, 2003

Before WILKINSON, Chief Judge, and WIDENER and
TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Chief Judge Wilkinson and Judge Traxler concurred.

---

## COUNSEL

**ARGUED:** Albert Charles Ellis, WARD & SMITH, P.A., Winter-
ville, North Carolina, for Appellants. Jerri Ulrica Dunston, Assistant
United States Attorney, Raleigh, North Carolina, for Appellee. **ON**

**BRIEF:** Teresa DeLoatch Bryant, WARD & SMITH, P.A., Winterville, North Carolina, for Appellants. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

---

**OPINION**

WIDENER, Circuit Judge:

Plaintiffs, Howard G. Dawkins, Jr., and Annette Dawkins, appeal the district court's order granting summary judgment in favor of defendant James Lee Witt, the director of the Federal Emergency Management Agency (FEMA). *Dawkins v. Witt*, No. 4:98-CV-124-F3 (E.D.N.C. Feb. 26, 1999). The plaintiffs own property insured under the National Flood Insurance Program that was damaged by Hurricane Fran. The plaintiffs contested FEMA's refusal to reopen their claim after FEMA made an initial payment for flood damage to the property. The district court granted the defendant summary judgment after determining that the plaintiffs could not recover. Because they failed to file a proof of loss within 60 days of the occurrence of the damage, as required by their insurance policy, we affirm.

I.

Because this case is before us on a motion for summary judgment, we view the facts in the light most favorable to the non-moving party, the plaintiffs. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Plaintiffs own a two-story home elevated above ground by posts on Figure Eight Island near Wilmington, North Carolina. On September 5, 1996, the plaintiffs' insured property was damaged as a result of Hurricane Fran. At the time of the hurricane, the plaintiffs' property was insured against flood damage through the National Flood Insurance Program with a policy they had purchased through a local agent, Fickling and Clement Insurance Company (Fickling and Clement). FEMA oversees and implements the National Flood Insurance Program. See *West Augusta Dev. Corp. v. Giuffrida*, 717 F.2d 139, 140 n.1 (4th Cir. 1983) (quoting *Meister Bros., Inc. v. Macy*, 674 F.2d 1174, 1175 n.1 (7th Cir. 1982)). The plaintiffs' policy contained several clauses rele-

vant in this appeal.[1] First, Article 9, Paragraph J(3) of the policy required that the plaintiffs file a proof of loss for any claim within 60 days of the flood damage or loss.[2] A proof of loss is a document that provides FEMA with a statement of the amount of the claim and specific details concerning the loss, its cause, and ownership of the damaged property. FEMA has the option to waive the 60 day requirement under Article 9, Paragraph J(7), and if it does, the claimant must sign an adjuster's report.[3] The policy, pursuant to the federal regulations governing the National Flood Insurance Program, also contained a provision in Article 9, Paragraph D stating that none of the provisions of the policy could be waived absent express written consent by the Federal Insurance Administrator.[4] See 44 C.F.R. § 61.13(d). The plaintiffs had also insured their property against wind damage with a policy issued by Lloyds of London.

The plaintiffs contacted Fickling and Clement on September 6, 1996 to inform them of the damage from the hurricane. Fickling and Clement then notified FEMA, who responded with a letter on September 10, 1996 indicating that it had received the notice of claim and had assigned it to Bellmon Adjusters, Inc. The letter also advised the plaintiffs that "[y]our policy requires you to submit a proof of loss to the Flood Center within sixty (60) days of the loss."

---

[1]FEMA advises that the policy issued to the plaintiffs was that which was in effect at the time of purchase in 1995. See 44 C.F.R., Pt. 61, App. A(1) (Oct. 1995). The standard flood insurance policy that is presently in effect pursuant to the current C.F.R. contains terms that may have been changed, but none of which are material here.

[2]"Should a flood loss occur to your insured property, you must: . . . [w]ithin 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you . . . ."

[3]"We may, at our option, waive the requirement for the completion and filing of a proof of loss in certain cases, in which event you will be required to sign, and, at our option, swear to an adjuster's report of the loss which includes information about your loss and the damages sustained, which is needed by us in order to adjust your claim."

[4]"This policy cannot be amended nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action we take under the terms of this policy can constitute a waiver of any of our rights."

An adjuster from Bellmon Adjusters, Bob Hughes, met with the plaintiffs on their property on September 13, 1996. The parties do not dispute that at that time, Hughes would not acknowledge that the hurricane was accompanied by waves and, therefore, only inspected the first level of the home for damage. While Hughes informed the plaintiffs that they could only make claims for losses that were verified by a proof of loss, he also told them that with major disasters, FEMA was not concerned with the 60 day deadline required by the policy and that it would reopen the claim if the plaintiffs found any further verifiable flood damage after that time.

Hughes sent an initial proof of loss to the plaintiffs, which they rejected because they did not believe it was reasonable. Hughes then sent a second proof of loss to the plaintiffs, which they signed and returned to FEMA in December 1996. The 60 day period for filing a proof of loss had expired November 4, 1996. The plaintiffs acknowledged that they sent in the proof of loss well past the 60 day deadline required by their policy. Despite the late filing, FEMA paid the claim amount indicated on the second proof of loss of $6965.28 in January 1997.[5] The plaintiffs also had an adjuster, C.P. Warren, assess the home for wind damage pursuant to their policy with Lloyds of London.

The plaintiffs then hired a contractor who proceeded to repair the property beginning in December 1996. The repairs continued until September 1997. During the repair process on July 16, 1997, the adjuster from Lloyds of London issued a report explaining that during his examination of the property, he determined that damage to the window frames in the upper floors of the home had occurred as a result of the flood waters twisting and uplifting the home and its decks. Thus, Lloyds of London would not pay the plaintiffs for those losses because its policy only covered wind damage.

---

[5]So that there may be no mistake, the proof of loss, which was paid in full by FEMA, claimed for damages by "FLOOD." The argument here is about the extent of the flood loss. That is to say, the failure to file a claim for the damage now sought within the time required by the policy with the concurring refusal of FEMA to re-open the claim to claim additional damage claimed for storm surge.

After learning of this additional loss, Fickling and Clement contacted FEMA on July 24, 1997 asking it to reopen the plaintiffs' claim. FEMA initially refused to reopen the claim on the basis that the areas the plaintiffs claimed were flood damaged were not covered by their policy. After this response, the plaintiffs and Fickling and Clement repeatedly contacted FEMA in an attempt to have the claim reopened. Finally, on January 21, 1998, FEMA sent a letter to the plaintiffs indicating that it did not believe that the damage the plaintiffs complained of was due to direct physical loss by flood, but advising the plaintiffs that if they wished to pursue the claim, they should secure a report from a structural engineer, at their own expense, stating how the flood waters caused the damage for review by FEMA. Accordingly, the plaintiffs hired Thomas Harwell, a structural engineer, to assess the damage to the home from the hurricane-induced flood. Harwell examined the property on March 3, 1998 and determined that, in his opinion, the flood had indeed caused structural damage to the home.

On May 16, 1988 a representative from FEMA, Marlin Barnett, met with the plaintiffs, Harwell, Warren, and an agent from Fickling and Clement. In a May 28, 1998 letter, Barnett stated his finding that he could not assess any damages to the house because it had already been fixed and that he could not understand how Harwell could confirm any damage due to flooding for the same reason. Therefore, Barnett stated that he could not justify any payments for damages repaired before inspection. On June 18, 1998, FEMA sent the plaintiffs a final letter denying their claim because the repairs to the property had compromised its ability to investigate.

On August 24, 1998, the plaintiffs filed a complaint in the Eastern District of North Carolina claiming that the defendant breached their contract of insurance resulting in damages in excess of $10,000 to the plaintiffs. After filing an answer, the defendant made a motion to dismiss or, in the alternative, for summary judgment based on the fact that the plaintiffs had not filed a proof of loss within the required 60 day period, precluding them from any recovery from the defendant as a matter of law. At no time prior to the commencement of this suit did the defendant assert that the plaintiffs were not entitled to coverage because they failed to file their proof of loss within the 60 day period required under the policy.

The district court granted the defendant's motion on February 1, 1999. The court found without merit the plaintiffs' arguments that the defendant could not use the 60 day period as a defense under the doctrines of waiver and equitable estoppel. The plaintiffs appeal, claiming the district court erred because it should have precluded FEMA from raising the 60 day limitation as a defense under the doctrines of waiver and equitable estoppel, because it was impossible for them to comply with the 60 day requirement, and because the proof of loss requirements in the policy were ambiguous.

## II.

We review a decision granting summary judgment *de novo*. *Shaw*, 13 F.3d at 798. A party is entitled to summary judgment only if we find no genuine issues of material fact and we determine that the moving party is entitled to judgment as a matter of law. *Shaw*, 13 F.3d at 798.

## III.

The plaintiffs' primary argument is that FEMA could not raise as a defense the plaintiffs' failure to file their proof of loss within 60 days under the doctrines of waiver and equitable estoppel. We are of opinion that both of these arguments are without merit.

## A.

It is undisputed that FEMA accepted the plaintiffs' first proof of loss after the 60 day period expired, that Hughes stated that the 60 day requirement would not be enforced, that FEMA continued to address the claim well after the 60 day period expired, and that the Federal Insurance Administrator did not provide an express written waiver of the 60 day requirement. Absent an express written waiver, the plaintiffs relied on FEMA's conduct as set forth above as a waiver of the 60 day requirement. However, the plaintiffs' insurance policy specifically provides in Article 9, Paragraph D that "[n]o action we take under the terms of this policy can constitute a waiver of any of our rights."

The policy did provide two means for FEMA to waive the 60 day requirement: the general waiver provision requiring express written consent of the Federal Insurance Administrator of Article 9, Paragraph D and the specific waiver provision for the 60 day proof of loss requirement in Article 9, Paragraph J(7). However, the plaintiffs have produced no express written wavier from the Federal Insurance Administrator nor any indication that FEMA exercised its option to waive specifically the 60 day requirement, either through documentation or an adjuster's report. Absent such evidence, we are left with the express terms of the policy, and pursuant to those terms, the above conduct does not constitute either a general wavier or an exercise of FEMA's option to exercise the specific waiver of the 60 day requirement. See *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998); *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 19 (1st Cir. 1986); *McCrary v. Federal Emergency Management Agency*, 642 F. Supp. 544, 546 (E.D.N.C. 1986).

### B.

The plaintiffs argue that FEMA is equitably estopped from raising the defense that the plaintiffs failed to provide a proof of loss within the requisite time period. The Supreme Court has consistently denied efforts by litigants to estop the government from raising defenses based on claimants' failures to comply with governmental procedures due to misinformation from government agents. See *Office of Personnel Management v. Richmond*, 496 U.S. 414, 434 (1990). ("As far as monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds.") (holding that plaintiff who was misinformed about his qualification to collect disability benefits could not estop government from collecting overpayments caused by the erroneous advice of a government employee); *Schweiker v. Hansen*, 450 U.S. 785, 786 (1981) (holding that government agent's advice that misinformed plaintiff that she was not eligible for social security benefits did not rise to level of affirmative misconduct that might reach a serious question as to whether the government might be estopped from insisting on compliance with a valid regulation required to receive benefits); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947) (finding that farmer could not recover under crop insurance on a lost crop even though the government agency misinformed the farmer that

his re-seeded wheat crop was covered by government-provided insurance when, in fact, a statute forbade such coverage). It is true that the Court has left for another day a decision that the government may never be estopped. *Richmond*, 496 U.S. at 423. However, the Court's decisions indicate that estoppel may only be justified, if ever, in the presence of affirmative misconduct by government agents. See *INS v. Hibi*, 414 U.S. 5, 8 (1973) (citing *Montana v. Kennedy*, 366 U.S. 308, 314-15 (1961)); *Schweiker*, 450 U.S. at 788-89. Thus, in order to show they even may be entitled to equitably estop FEMA, the plaintiffs must not only satisfy the traditional requirements for equitable estoppel,[6] but also they must show affirmative misconduct by FEMA that exceeds conduct the Court has already deemed acceptable.

The behavior the plaintiffs must rely on in this case to demonstrate affirmative misconduct consists of the following: Hughes representing to the plaintiffs that FEMA was not concerned about the 60 day requirement with major disasters, FEMA accepting the plaintiffs' initial proof of loss well after the 60 day deadline, and FEMA proceeding to continue to address their claim after the 60 day deadline. We agree with the district court that while the plaintiffs may have shown "unprofessional and misleading conduct by Hughes," this conduct is no worse than that the Supreme Court has determined does not rise to a level to justify estoppel against the government.[7]

---

[6]For purposes of this opinion, we have assumed that the plaintiffs established the four traditional requirements for estoppel as follows: "(1) the party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the parties seeking estoppel." *McCrary*, 642 F. Supp. at 547 (citing *United States v. 18.16 Acres of Land*, 598 F. Supp. 282, 286 (E.D.N.C. 1984)).

[7]We decline to follow the two cases cited by the plaintiffs in which courts have estopped the government from asserting the defense that claimants failed to file a proof of loss in the 60 day period. See *Meister Bros.*, 674 F.2d at 1177; *Dempsey v. Director*, 549 F. Supp. 1334, 1340-41 (E.D. Ark. 1982). We find that the Supreme Court's decisions in this area determine the outcome of this case.

IV.

The plaintiffs also argue that due to the devastation and circumstances surrounding Hurricane Fran it was impossible for them to comply with the 60 day proof of loss requirement, and therefore, the district court should not have granted the defendant summary judgment. While we may agree that the circumstances surrounding a major natural disaster may make it extremely difficult for insured parties to comply with the 60 day time limit, we agree with the district court that this argument fails. The insurance policy specifically requires a claimant to file a proof of loss within 60 days to receive coverage regardless of the circumstances of the claim. As explained above, FEMA did not waive this requirement. While compiling the required information in 60 days under stressful circumstances may be difficult, it is exactly what the policy requires.

V.

Finally, the plaintiffs argue that the provisions in their insurance policy regarding the proof of loss requirement are ambiguous and that if we construe the ambiguity in the insured's favor, the defendant is not entitled to summary judgment. The plaintiffs contend that the language of the policy is ambiguous because in addition to the 60 day requirement of Article 9, Paragraph J(3), Article 9 in Paragraph J(1) asks claimants to notify FEMA of the loss in writing "as soon as practicable" and in Paragraph J(2) requests that claimants separate damaged and undamaged property "[a]s soon as reasonably possible." Additionally, plaintiffs' first letter from FEMA, in addition to notifying them that they must file a proof of loss within 60 days, asked the plaintiffs to submit their claim "as soon as possible." We are of opinion that the language in the policy and in the FEMA letter is not ambiguous. While the policy and letter request that claimants act as soon as possible, they also place a 60 day limit on the time claimants have available to make their claims, absent a waiver.

The order of the district court dismissing the case is accordingly

*AFFIRMED*.