[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 25, 2003
THOMAS K. KAHN
CLERK

No. 02-14388
Non-Argument Calendar

D.C. Docket No. 01-07502-CV-WPD

EDUARDO SANZ,

Plaintiff-Appellant,

versus

U.S. SECURITY INSURANCE COMPANY,

Defendant-Appellee.

Appeal from the United States District Court for the
Southern District of Florida

**(April 25, 2003)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Eduardo Sanz, proceeding pro se, filed this action against United States

Security Insurance Company ("Security") seeking recovery under a federal flood

insurance policy issued pursuant to the National Flood Insurance Program.  After a bench trial, the district court granted Defendant Security's motion for judgment as a matter of law because Plaintiff Sanz failed to perform certain conditions precedent to recovery on the flood insurance policy.  Sanz appeals, arguing that Security either waived certain policy conditions or should be estopped from asserting them.  Upon review, we affirm.

## I. BACKGROUND

We first review the terms of Sanz' policy with Security and then the events giving rise to this lawsuit.

### A.    Sanz' Insurance Policy

In issuing Sanz' flood insurance policy, Security acts as the fiscal agent of the United States Government.[1]  Therefore, Sanz' flood insurance policy contained standard terms and conditions mandated by the National Flood Insurance Act of 1968 ("Act"), see 42 U.S.C. § 4001(a), (b), and Code of Federal Regulations, see

---

[1]Congress enacted the National Flood Insurance Act of 1968 ("Act"), see 42 U.S.C. § 4001(a), (b), which authorized the establishment of the National Flood Insurance Program. Today, the program is managed by the Federal Emergency Management Agency ("FEMA"). FEMA uses private insurers, such as Security, as fiscal agents.  Although these fiscal agents issue the flood insurance policies, their terms and conditions are controlled by the Act and federal regulations. Furthermore, all claims and expenses are paid out of the National Flood Insurance Fund in the U.S. Treasury.

44 C.F.R. § 61, App. A(1).[2]  Furthermore, the terms and conditions of the

insurance contract are undisputed in this case.[3]

Four provisions of the standard flood insurance contract are relevant to this

case.  The first is the general no waiver provision in the policy.  That provision

states that the "policy cannot be amended nor can any of its provisions be waived

without the express written consent of the Federal Insurance Administrator.  No

action we take under the terms of this policy can constitute a waiver of any of our

rights."  44 C.F.R. § 61, App. A(1), Art. 9D (1998).[4]

The second is the 60-day proof of loss requirement in Sanz' policy.

Specifically, the policy states that Sanz is required, "[w]ithin 60 days after the

loss, [to] send [Security] a proof of loss, which is [Sanz'] statement as to the

---

[2]Sanz testified that he purchased his home between six weeks and two months before Hurricane Irene damaged his home on October 15, 1999.  This Court understands that Sanz would have had to obtain flood insurance before securing a mortgage for his home.  Therefore, we shall apply the version of the regulations in effect at the time Sanz purchased his home.  Because all the relevant terms and conditions of the regulations remained unchanged from the time of Sanz' home purchase to the date he filed his lawsuit, it makes little difference whether we apply the regulations in effect at the time Sanz purchased his home, the time Hurricane Irene damaged his home, or the time he filed his lawsuit.

[3]All trial exhibits, including Sanz' insurance contract with Security, were released to Sanz, and he has yet to return those exhibits to the district court or to provide this Court with copies.  Because the terms and conditions of Sanz' flood insurance contract are undisputed and mandated by the Act and Federal Regulations, we apply the terms and conditions stated in the Code of Federal Regulations.

[4]All citations to C.F.R. will be the 1998 version unless otherwise noted.

amount [he is] claiming under the policy signed and sworn to by [him] and furnishing" specific information.  Id. at Art. 9J(3).

The third relates to the adjustor's role and states, "[t]he insurance adjuster whom [Security] hire[s] to investigate [Sanz'] claim may furnish [him] with a proof of loss form, and she or he may help [Sanz] to complete it. However, this is a matter of courtesy only, and [Sanz] must still send [Security] a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help [Sanz] complete it." Id. at Art. 9J(6).

Finally, the policy gives the government the option to waive the proof of loss requirement.  Specifically, the policy states that the federal government "may, at [its] option, waive the requirement for the completion and filing of a proof of loss in certain cases . . . ." Id. at Art. 9J(7).

## B.    Hurricane Irene

After the bench trial, the district court made certain factual findings when granting Security's motion for judgment as a matter of law.  The following facts are undisputed by the parties.

On October 15, 1999, Hurricane Irene caused damage to Sanz' home in Dania Beach, Florida.  During the hurricane, canals on both sides of his neighborhood converged, causing water to flood the area and enter his home.

4

Although there was no immediate signs of damage, Sanz began to notice cracks in the walls of his house after approximately two months. Sanz' repeated efforts to repair the cracks were unsuccessful. On February 29, 2000, he notified Security, his insurance carrier, of the damage.

In April of 2000, adjustors and a structural engineer visited Sanz' home in an attempt to determine the cause and scope of the damage. Sanz contends that the adjustors informed him that he needed to submit estimates of the damage to Security. In June 2000, Sanz followed the advise and sent estimates of repair to Security. Sanz further contends that Security continued to reassure him that all paperwork had been filed and that Security would "take care of him." Sometime thereafter, Security denied Sanz' claim.

On September 20, 2001, Sanz filed this lawsuit against Security claiming that Security breached the insurance contract when it refused to pay. Although Sanz was represented by counsel when the complaint was filed, he proceeded pro se during the bench trial.

After the bench trial, the district court granted Security's motion for judgment as a matter of law.[5] The district court reasoned that because Sanz did

---

[5]In reviewing a district court's grant of a motion for judgment as a matter of law pursuant to Rule 52(c), this Court reviews conclusions of law de novo and findings of fact for clear error. DeKalb County Sch. Dist. v. Schrenko, 109 F.3d 680, 687 (11th Cir. 1997).

not file a proof of loss as required by his insurance policy, his claim must necessarily fail. The district court relied on decisions from the Eighth and Fifth Circuits and concluded that individuals insured via federal flood insurance policies must adhere strictly to all conditions precedent contained in their policies.

## II. DISCUSSION

### A.    Strict Compliance with Policy Conditions

The issue in this case is whether the district court correctly determined that all conditions precedent must be fulfilled before an individual may receive benefits under a federal flood insurance contract. Five of our sister circuits that have address this issue have all concluded that there must be strict compliance with the terms and conditions of federal flood insurance policies and that the failure to file a proof of loss prohibits a plaintiff from recovery. Dawkins v. Witt, 318 F.3d 606 (4th Cir. 2003); Mancini v. Redland Ins. Co., 248 F.3d 729 (8th Cir. 2001); Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386 (9th Cir. 2000); Gowland v. Aetna, 143 F.3d 951 (5th Cir. 1998); Phelps v. Fed. Emergency Mgmt. Agency, 785 F.2d 13 (1st Cir. 1986). But see Meister Bros., Inc. v. Macy, 674 F.2d 1174 (7th Cir. 1982).[6]

---

[6]In Meister, the Seventh Circuit "emphasize[d] that [its] holding is of necessity limited to the unique circumstances of [the] case." Meister, 674 F.3d 1177. The Court further stated that it did "not intend to intimate in any way an appropriate standard for resolution of future cases . . . ." Id.

In reaching this conclusion, these circuit courts have all relied on <u>Federal Crop Ins. Corporation v. Merrill</u>, 332 U.S. 380, 384-85 (1947), where the Supreme Court held that an insured must comply strictly with all terms and conditions of a federal insurance policy. In <u>Merrill</u>, the Supreme Court recognized the "duty of all courts to observe the conditions defined by Congress for charging the public treasury." <u>Id.</u> at 385.

In <u>Flick</u>, 205 F.3d at 391, the court recognized that, since <u>Merrill</u>, the Supreme Court, in <u>Office of Personnel Management v. Richmond</u>, 496 U.S. 414 (1990), further curtailed the ability of those individuals insured via the federal government to avoid the terms and conditions of their policies. <u>See</u> <u>generally</u> <u>Dawkins</u>, 318 F.3d at 611; <u>Mancini</u>, 248 F.3d at 735; <u>Gowland</u>, 143 F.3d 954-55. <u>Richmond</u> concluded that the Appropriations Clause's fundamental purpose is "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." <u>Richmond</u>, 496 U.S. at 428. The Supreme Court went on to hold that a plaintiff

The Seventh Circuit even recognized that the Supreme Court had ruled that misinformation from a government employee does not provide a basis for estoppel. <u>Id.</u> The Seventh Circuit held, however, that misinformation over several months, when combined with a partial payment of the claim, was sufficient to estop the insurance company from relying on the fact that a proof of loss had not been filed. <u>Id.</u> Given Supreme Court precedent decided after <u>Meister</u> and that every circuit court to address the issue since <u>Meister</u> has reached a contrary conclusion, we decline to follow <u>Meister</u>.

who was misinformed about his qualification to collect disability benefits could not estop the government from collecting overpayments caused by the erroneous advice of a government employee. Id. at 434.

As the Supreme Court has warned, not even the "temptations of a hard case" should cause courts to read the requirements of a federal insurance contract with "charitable laxity." Merrill, 332 U.S. at 386. We agree with our sister circuits and conclude that the insured must adhere strictly to the requirements of the standard federal flood insurance policy before any monetary claim can be awarded against the government.

## B. Waiver

On appeal, Sanz argues that Security waived the 60-day proof of loss requirement because Security continued to process his claim and repeatedly assured him that all necessary forms had been filed. Sanz admits, however, that: (1) he did not submit a proof of loss as required by his policy; and (2) he did not receive written notice from the Federal Insurance Administrator that the proof of loss requirement was waived.

In Dawkins, it was undisputed that FEMA accepted the plaintiffs' first proof of loss after the 60-day period expired, that the insurance company stated that the 60-day requirement would not be enforced, and that the claim was processed well

after the 60 days.  <u>Dawkins</u>, 318 F.3d at 610.  The Fourth Circuit, however, concluded that absent an express written waiver from the Federal Insurance Administrator, there was no waiver of the proof of loss requirement.  <u>Id</u>. at 610-11.

In <u>Gowland</u>, the plaintiffs argued that the 60-day proof of loss requirement was waived because: (1) the insurance company did not originally assert it as a basis for denying the claim; (2) the insurance company repeatedly reopened their claim after the 60-day deadline; and (3) the reminder letter regarding the proof of loss statement failed to specify accurately the information prescribed in the policy. <u>Gowland</u>, 143 F.3d at 954.  The Fifth Circuit, however, held that it was powerless to grant relief absent a valid, written waiver from the Federal Insurance Administrator.  <u>Id.</u>

Given the directives of <u>Merrill</u> and <u>Richmond</u>, we join the other five circuit courts that have addressed this issue and hold that Sanz' failure to file a proof of loss within 60 days without obtaining a written waiver of the requirement eliminates the possibility of recovery. <u>See</u> <u>Dawkins</u>, 318 F.3d at 612; <u>Mancini</u>, 248 F.3d at 734 n.2; <u>Flick</u>, 205 F.3d at 391-92; <u>Gowland</u>, 143 F.3d at 954; <u>Phelps</u>, 785 F.2d at 19.  <u>But</u> <u>see</u> <u>Meister</u>, 674 F.2d at 1176-77.

**C.  Estoppel**

Sanz further argues that even if Security did not waive the proof of loss requirement, it should be estopped from asserting the proof of loss requirement as a ground for denying Sanz' claim. It is true that the Supreme Court has yet to announce a per se rule that equitable estoppel is never available against the Government. Richmond, 496 U.S. at 434 ("As for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds.").

As recognized in Dawkins and the other circuits to address this issue, however, the Supreme Court consistently has denied efforts by litigants to estop the Government from raising defenses based on claimants' failures to comply with governmental procedures due to misinformation from government agents. See also Richmond, 496 U.S. at 434 (holding that plaintiff who was misinformed about his qualification to collect disability benefits could not estop the Government from collecting overpayments caused by the erroneous advice of a government employee); Schweiker v. Hansen, 450 U.S. 785, 786 (1981) (holding that government agent's advice that misinformed plaintiff that she was not eligible for social security benefits did not rise to level of affirmative misconduct that might reach a serious question as to whether the government might be estopped from insisting on compliance with a valid regulation required to receive benefits);

10

Merrill, 332 U.S. at 384-85 (concluding that farmer could not recover under crop insurance on a lost crop even though the government agency misinformed the farmer that his re-seeded wheat crop was covered by government-provided insurance when, in fact, a statute forbade such coverage).

The Supreme Court's decisions indicate that even if estoppel is available against the Government, it is warranted only if affirmative and egregious misconduct by government agents exists. See INS v. Hibi, 414 U.S. 5, 8 (1973) (citing Montana v. Kennedy, 366 U.S. 308, 314-15 (1961)); Schweiker, 450 U.S. at 788-89. Thus, in order for Sanz to demonstrate that he is entitled to assert equitable estoppel against the Government, he must establish the traditional requirements for equitable estoppel and that the Government engaged in affirmative and egregious misconduct; that is, conduct which at least exceeds a level the Supreme Court already has deemed insufficient to trigger equitable estoppel. Dawkins, 318 F.3d at 611-12.

In this case, Sanz has failed to allege any misconduct on the part of Security that rises to the level necessary to overcome the obstacles to equitable estoppel. The fact that Security failed to inform Sanz of the proof of loss requirement is insufficient to establish liability. Indeed, the applicable regulations state specifically that Security is not required to provide Sanz with a proof of loss or

11

assist him in filling one out. See 44 C.F.R. § 61, App. A(1), art. 9J(6). Even assuming Sanz' allegation that Security informed Sanz that he had filled out all the necessary paperwork and that Security would "take care" of his claim, equitable estoppel remains unavailable. See, e.g., Dawkins, 318 F.3d at 612 (concluding no equitable estoppel even though insurance company said 60-day proof of loss requirement did not apply to major disasters and accepted insured's proof of loss after 60 days); Gowland, 143 F.3d at 954-55 (concluding no equitable estoppel even though insurance company went so far as to reopen a claim without a proof of loss being filed); see also Richmond, 496 U.S. at 428 ("Estoppel would give this advice the practical force of law, in violation of the Constitution."); Merrill, 332 U.S. at 384 ("The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.").

### III. CONCLUSION

The result in this case is mandated by federal regulations and Supreme Court caselaw. Consequently, we must affirm the district court's decision.

**AFFIRMED.**