**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1745

LUZ J. AUSTIN,

Plaintiff - Appellant,

versus

DONALD C. WINTER, Secretary of the Navy,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:05-cv-01367-TSE)

Argued:  March 18, 2008          Decided:  July 11, 2008

Before WILKINSON and MOTZ, Circuit Judges, and William L. OSTEEN, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Thomas R. Gill, GILL GROUP, APC, San Diego, California, for Appellant.  Ralph Andrew Price, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Luz Austin seeks review of the district court ruling which granted summary judgment to the Secretary of the Navy ("Secretary") based on Appellant's failure to exhaust all administrative remedies before filing a complaint in the district court. This court has jurisdiction over the appeal of a final judgment of a district court. 28 U.S.C. § 1291.[1] For the reasons set forth below, we affirm.

## I. Facts

In February 2003, Appellant, a Filipino female, was hired by the Navy as an accounting technician for the Navy's Camp Butler facility in Okinawa, Japan. This position required Appellant to work jointly with Japanese government employees under the Master Labor Contract, an international agreement between the governments of the United States and Japan. Though Appellant's job was officially titled "lead account technician," her job description contained no reference to supervisory or leadership responsibilities. In fact, Appellant's supervisor specifically instructed her on numerous occasions not to supervise or counsel her coworkers. Despite these repeated directives, Appellant continually attempted to supervise her coworkers.

---

[1]Appellant claims that this court has jurisdiction over this matter under 42 U.S.C. § 2000. There is no such specific provision. This court does have jurisdiction under 28 U.S.C. § 1291.

On September 25, 2003, the Navy terminated Appellant's employment.[2] The termination letter stated that Appellant was being terminated because of her failure to heed her superior's instructions regarding the supervision of other workers, constant complaints about her salary grade level, and insubordinate behavior. The letter informed Appellant of her rights to challenge her termination, stating that she could appeal the termination action to the Merit Systems Protection Board ("MSPB") if her appeal was based upon discrimination for partisan political reasons or marital status, or the termination was not "effected in accordance with the procedural requirements." (J.A. 126.) The letter also informed Appellant that a termination resulting from discrimination "based on race, color, religion, sex, or national origin, handicapping condition or age" was not appealable to the MSPB, but could be appealed through the Equal Employment Opportunity Commission ("EEOC"). (Id.)

On or about October 25, 2003, Appellant challenged her termination by filing an appeal petition to the MSPB.[3] Appellant's petition made two claims: (1) the Navy discriminated against her based on her race, gender, and age, and (2) the Navy failed to follow the proper administrative procedures in effecting her

[2]Appellant's employment was terminated by the same person who significantly participated in the decision to hire Appellant.

[3]Appellant's petition of appeal to the MSPB is undated, but was acknowledged as timely received within the 30-day deadline by the MSPB on October 30, 2003.

3

termination. On November 4, 2003, while the MSPB appeal was pending, the Appellant also contacted an EEO counselor and alleged that her termination was unlawful for the same reasons stated in the MSPB petition. After her attempts to resolve the matter on an informal level were unsuccessful, Appellant filed a formal complaint with the Navy's EEO office on December 23, 2003, again alleging that she was terminated because of her race, age, and gender. The Navy EEO office informed Appellant that it would hold her complaint in abeyance until the MSPB ruled on whether it had jurisdiction to hear her appeal as required by 29 C.F.R. § 1614.302(c)(2)(ii).

On February 9, 2004, an MSPB Administrative Law Judge ("ALJ") found that the MSPB lacked jurisdiction to hear Appellant's claims because she was a probationary employee at the time of her termination and the MSPB has no authority to preside over decisions affecting probationary employees. Appellant appealed this decision to the MSPB Appeals Board, claiming that she was not a probationary employee. The MSPB Appeals Board disagreed and affirmed the ALJ's decision on February 4, 2005, nearly a year later.

On February 24, 2005, after receipt of the MSPB's final judgment, the Navy informed Appellant that it would begin investigating her formal EEO complaint. The Department of Defense's Office of Complaint Investigation ("OCI") was assigned Appellant's case, and after reviewing the initial materials,

decided to dismiss one of Appellant's ancillary claims.[4]  To further aid in the investigation of Appellant's remaining claims, the OCI set up a fact-finding conference pursuant to 29 C.F.R. § 1614.108(b), to be held via telephone on July 29, 2005.  According to the OCI, the fact-finding conference would be used as both an opportunity to gather evidence as well as an opportunity to discuss settlement.  (J.A. 175).

On July 10, 2005, Appellant contacted and informed the OCI that although she was not dropping the complaint she would not participate in the fact-finding conference on advice of counsel.  Appellant's correspondence read: "I would like to cancel this call [the fact-finding conference] due to the advised [sic] of my lawyer so that he may analyze the whole case.  Please be reminded that I am determined to see this case through whatever it takes so I am not dropping the complaints."  (J.A. 64.)  Appellant's attorney sent similar correspondence verifying that Appellant would not participate in the fact-finding conference because she intended to seek a remedy in court.  The attorney's letter stated: "This letter is sent as a matter of *courtesy* to notify suit will occur prior to July 29, 2005, the date now set for interviews.  To be sure we're clear, Ms. Austin will not participate in the latter [the fact-finding conference]."  (J.A. 181 (emphasis original).)

---

[4]Appellant initially made claims in addition to those for discrimination, which included, inter alia, alleged rights to overtime pay.

In accordance with Appellant's request, the OCI suspended its investigation of Appellant's complaint. The OCI then sent Appellant notice of her obligation to inform the OCI within 15 calendar days of her intentions with respect to the EEO case, otherwise her case would be dismissed in accordance with 29 C.F.R. § 1614.107(7). Neither Appellant nor her counsel contacted the OCI within 15 calendar days as required. Instead, Appellant filed a complaint in the Southern District of California on August 5, 2005.[5] The OCI dismissed Appellant's EEO case after the 15-day notice period expired.

In the district court, Appellee moved for summary judgment claiming, inter alia, that Appellant failed to exhaust her administrative remedies before filing in the district court. The district court held that Appellant's withdrawal from the fact-finding conference and failure to follow through on her EEO complaint constituted a failure to pursue administrative remedies. Accordingly, the district court granted summary judgment in favor of the Secretary. The case is now before this court on appeal from the district court's judgment.

---

[5]Appellant filed a complaint in the District Court for the Southern District of California. That court transferred the case to the Eastern District of Virginia, as that is the appropriate district to bring suit against the Navy. See 42 U.S.C. § 2000e-5(f)(3); also J.A. 2-3, 209.

## II. Analysis

We review a district court's order granting summary judgment de novo.  See Livingston v. Wyeth, Inc., 520 F.3d 344 (4th Cir. 2008) (citing Holland v. Washington Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007)).  Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrate that no genuine issues of material fact exist, thus entitling the moving party to judgment as a matter of law.  Fed. R. Civ. P. 560; see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).  We construe the facts in the light most favorable to Appellant, as she was the nonmoving party.  See Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)).

The district court found that Appellant refused to cooperate in the fact-finding conference and held that this refusal constituted a failure to exhaust her administrative remedies. Appellant argues that the district court erred in reaching this conclusion on two grounds: (1) Appellant's substantial compliance with the administrative process constituted an exhaustion of remedies, and (2) the Secretary should be equitably estopped from raising an exhaustion argument because the Navy failed to properly advise Appellant of her rights.

A. Substantial Compliance

Appellant's principal argument to support a finding of exhaustion is that she substantially complied with the administrative process and therefore should be excused from participating in the fact-finding conference. The district court found this argument to be unpersuasive, holding that a "claimant cannot abandon the [administrative] process simply because she is dissatisfied with the pace of the proceedings or because [she] subjectively views the resolution of the dispute unlikely or futile." (J.A. 213.) We agree with the district court.

Federal employees who seek to enforce their rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., must exhaust their available administrative remedies prior to pursuing an action in federal court. Brown v. General Serv. Admin., 425 U.S. 820, 832, 96 S. Ct. 1961, 1968 (1976) ("Initially, the complainant must seek relief in the agency that has allegedly discriminated against him."). This requirement exists to minimize "judicial interference with the operation of the federal government." Doe v. Oberweis Dairy, 456 F.3d 704, 712 (7th Cir. 2006) (citation omitted). It also affords an "agency the opportunity to right any wrong it may have committed." McRae v. Librarian of Congress, 843 F.2d 1494, 1496 (D.C. Cir. 1988).[6]

---

[6]The Code of Federal Regulations and United States Code govern the requirements for filing a Title VII complaint. These regulations require an aggrieved person who believes he or she has been discriminated against the basis of race, color, religion, sex,

8

Appellant initially availed herself of the administrative process but never followed the process through to completion. Appellant argues, however, that continued attempts to resolve the matter at the administrative level would have been futile. The facts of the case show otherwise.

Appellant contends that her lack of participation in the fact-finding conference should be excused because the fact-finding conference was a duplicitous procedure that would not have contributed any additional information to her administrative case. These fact-finding conferences are specifically authorized by the Code of Federal Regulations as a means of developing "an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint." 29 C.F.R. § 1614.108(b). The factual record developed through the use of these conferences "allows a reasonable fact finder to draw conclusions as to whether discrimination occurred." Id. Contrary to Appellant's contention, the fact-finding conference was an important part of the investigative process and integral to reaching a final decision on Appellant's claim.

---

national origin, age or handicap to consult a counselor prior to filing a complaint and attempt to resolve the matter informally. 29 C.F.R. § 1614.105(a). This contact must occur within 45 days of either the occurrence of the matter alleged, or the effective date of a personnel action. Id. § 1614.105(a)(1). After filing a formal complaint, an aggrieved person may bring suit in federal court either within 90 days of a final agency action, or if no final action was taken, after 180 days from the filing of the initial charge. 42 U.S.C. § 2000e-16(c).

In this case, the OCI intended to use the fact-finding conference as an opportunity to transcribe witness and party testimony under oath and as a forum to discuss potential settlement solutions. Additionally, the OCI placed great emphasis on the importance of the fact-finding conference, stating in its notice to Appellant that "[t]hose failing to appear without good cause will be considered to have failed to cooperate in an official investigation." (J.A. 176.)[7]

While private sector Title VII cases do not require a claimant to cooperate in the administrative process, the same is not true in cases involving federal employees. See Jasch v. Potter, 302 F.3d 1092, 1094 (9th Cir. 2002) ("Exhaustion [in an action against a federal agency] requires that a plaintiff comply with regulatory and judicially-imposed exhaustion requirements, including the requirement to pursue the administrative claim with diligence and in good faith.") (citation and internal quotations omitted); Oberweis Dairy, 456 F.3d at 709-12 (Title VII "does not impose a duty of cooperation" in private sector cases, "[b]ut the statutory framework is different" for federal employees.); but see Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304 (10th Cir. 2005) (The court held that a private sector employee was required to cooperate with

---

[7]Complaint investigators are given a considerable amount of authority during their investigations and may take a number of actions against those who "fail without good cause shown to respond fully and in timely fashion to [the investigator's] requests." 29 C.F.R. § 1614.108(c)(3).

10

the EEOC in order to exhaust his administrative remedies.).  In fact, a "complainant's failure to cooperate in the administrative process precludes exhaustion when it prevents the agency from making a determination on the merits." Jasch, 302 F.3d at 1094 (citations omitted); see also Woodard v. Lehman, 717 F.2d 909, 915 (4th Cir. 1983) ("When the plaintiffs refused to provide such information and thereby frustrated administrative review of the merits of their claims, the District Court should not have reached the merits of their claims but should have granted the defendant's motion to dismiss for failure to exhaust administrative remedies.") (citation and internal quotations omitted).

Though Appellant began the administrative process, this process was not complete until Appellant fully participated in all required aspects of the investigation and the Navy reached a final decision on her claim.  Otherwise, the administrative process "would be blunted if the employee could bypass the employer by not cooperating." Oberweis Dairy, 456 F.3d at 712.  Appellant cannot show that she cooperated in any way with the fact-finding conference.  Instead, Appellant offers conflicting excuses for canceling the fact-finding conference.  For example, Appellant stated that the fact-finding conference was redundant because she previously provided numerous statements to the investigating agency; however, she admitted that she "had not spoken with an investigator." (J.A. 82.)  Appellant also claimed that she desired

11

to cancel the conference because she was in need of a translator. If this was the case, Appellant would have greatly benefitted from submitting additional and accurate testimony with the aid of a translator at the fact-finding conference.

Appellant's behavior in this case is no different from that in other cases where courts have found a failure to cooperate and thus affirmed a finding that the complainant failed to exhaust administrative remedies. In Johnson v. Bergland, 614 F.2d 415 (5th Cir. 1980), for example, the Fifth Circuit reviewed a federal agency's decision to dismiss a complaint based upon the plaintiff's failure to provide the agency with more detailed information concerning the specific dates and instances to support the plaintiff's claim. In affirming the agency's decision, the court concluded the plaintiff's failure "to supply the agency with information sufficiently specific to enable it to conduct a meaningful investigation. . ." was sufficient cause to find the plaintiff failed to exhaust his administrative remedies. Id. at 418 (citation omitted).

Likewise in Woodard v. Lehman, 717 F.2d 909 (4th Cir. 1983), the Fourth Circuit reviewed a case involving two plaintiffs who filed disparate treatment claims against the Secretary of the Navy. Just as in Johnson, the agency requested that plaintiffs provide more detailed information regarding their complaints, including

specific dates and instances, but the plaintiffs failed to comply.[8] Woodard, 717 F.2d at 912.  In response, the agency dismissed the plaintiffs' charges.  Id.  The plaintiffs then filed a complaint in federal district court, to which the Secretary moved for summary judgment based on the plaintiffs' failure to exhaust their administrative remedies.  Id.  Though the district court denied the motion, the Fourth Circuit revisited the issue in its decision and criticized the district court's ruling as "manifestly incorrect." Id. at 914.  The Fourth Circuit stated that the agency's motion should have been granted because the plaintiffs in "refusing to give such details and dates . . . prevented the defendant from investigating the charges and consequently failed to exhaust [their] administrative remedies."  Id. at 914.

In this case, Appellant's actions prevented the agency from fully investigating the complaint and reaching a final decision. Accordingly, this court finds that Appellant's failure to cooperate constitutes a failure to exhaust her administrative remedies.

B. Estoppel

Appellant contends that the Secretary should be estoped from raising an exhaustion of administrative remedies defense because the Navy acted in bad faith in failing to apprise Appellant of her

---

[8]Instead, the plaintiffs responded to the Navy's request for additional details through their attorneys who stated that they "were willing to meet with the Navy officials to provide additional details."  Id. at 914.

13

rights to challenge her termination. The Secretary argues that there is no estoppel against the government absent a showing of affirmative misrepresentation by a government agent, and that the behavior alleged by Appellant is not of the type that would support estoppel. We agree.

In order for equitable estoppel to apply to preclude a defense, the party claiming equitable estoppel must satisfy the following requirements:

> (1) the party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the parties seeking estoppel.

Dawkins v. Witt, 318 F.3d 606, 612 n.6 (4th Cir. 2003) (citation and internal quotations omitted). These requirements differ, however, when the party to be estopped is the federal government. See Office of Pers. Management v. Richmond, 496 U.S. 414, 419, 110 S. Ct. 2465, 2469 (1990) ("equitable estoppel will not lie against the Government as against private litigants") (citation omitted). To estop the federal government, a party must show "affirmative misconduct by government agents." Dawkins, 318 F.3d at 611 (citations omitted); see also Richmond, 496 U.S. at 420, 110 S. Ct. at 2470. The standard for showing affirmative misconduct is rigorous. See Richmond, 496 U.S. at 422, 110 S. Ct. at 2470 ("we have reversed every finding of estoppel [against the federal

14

government] that we have reviewed"). The Court, however, has not foreclosed the possibility of estopping the federal government. See Heckler v. Community Health Servs., 467 U.S. 51, 60, 104 S. Ct. 2218, 2224 (1984) (declining to hold that the federal government may never be estopped).

Appellant maintains that the Navy failed to advise her regarding the proper process of filing a discrimination claim because it did not specifically direct her to file with the EEO office, and instead allowed her to pursue a claim with the MSPB despite knowing the MSPB had no jurisdiction. Appellant's argument is without merit. Upon being terminated, Appellant received a letter informing her of the ways in which a terminated employee could challenge his or her discharge. (J.A. 125-27.) After receiving this letter Appellant decided to file a complaint with both the MSPB and EEO office. Appellant chose this course of action, not as a result of being misdirected by a government employee, but rather because she "believed it was necessary to file with both to protect [her] rights." (J.A. 81.) During this process, Appellant's EEO claim was held in abeyance while the MSPB reviewed her discrimination claim. The EEOC informed Appellant that "[i]f the MSPB administrative judge determines that MSPB does not have jurisdiction of your appeal, the agency [EEO office] will recommence processing of your complaint." (J.A. 145.)

15

On February 9, 2004, the ALJ determined the MSPB lacked jurisdiction to hear Appellant's appeal because she was a probationary employee. Despite receiving information that specifically informed her that the EEO office would begin investigation of her complaint at this point in time, Appellant felt compelled to appeal the ALJ's decision because she believed she was not a probationary employee. Her decision to appeal the ALJ's ruling was not influenced by any advice proffered by a government agent, but instead over her own misunderstanding of the process and her erroneous belief that the only way to protect her rights was to file another appeal. This is certainly not the type of circumstance that would qualify as affirmative misconduct.

Even assuming that a government agent misinformed Appellant of the proper method of filing a complaint, Appellant would still not have a proper basis for estoppel. See Dawkins, 318 F.3d at 611 ("The Supreme Court has consistently denied efforts by litigants to estop the government from raising defenses based on claimants' failures to comply with governmental procedures due to misinformation from government agents.") (citing Office of Personnel Management v. Richmond, 496 U.S. 414, 110 S. Ct. 2465 (1990); Schweiker v. Hansen, 450 U.S. 785, 101 S. Ct. 1468 (1981); Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S. Ct. 1 (1947)).

16

Appellant failed to identify, nor can we find, any set of facts that would constitute affirmative misconduct by the United States Government. Moreover, there was no action on behalf of the Secretary that denied Appellant the opportunity of administrative review. Appellant decided not to participate in the fact-finding conference. There are no grounds to allow Appellant to equitably estop the Secretary from raising the defense of failing to exhaust administrative remedies. Accordingly, we affirm the district court's ruling.

## III. Conclusion

For the reason set forth herein, we affirm the judgment of the district court granting summary judgment in favor of the Secretary of the Navy.

AFFIRMED